VIOLA GENTRY et al., by Guardian, Respondents, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, April 8, 1913.

1. **RAILROADS: Master and Servant: Death of Section Hand: Sufficiency of Evidence.** A section hand was ordered by his foreman to remove a jack from under a rail before an approaching train reached it. The train was then about 150 yards away and was running at a speed of from fifty to sixty miles per hour. The train struck the jack just as the section hand took hold of it, and he sustained injuries resulting in his death. In an action for his death, *held* that, inasmuch as the train would cover the 150 yards in five or six seconds, it was a question for the jury whether decedent, in taking hold of the jack when the train was almost upon him, was acting in obedience to the foreman's order.

2. ———: ———: ———: **Contributory Negligence.** A section hand was ordered by his foreman to remove a jack from under a rail before an approaching train reached it. The train was then about 150 yards away and was running at a speed of from fifty to sixty miles per hour. The train struck the jack just as the section hand took hold of it, and he sustained injuries resulting in his death. In an action for his death, *held* that it was a question for the jury whether decedent was guilty of contributory negligence in executing the order; *held, further,* that it was also a question for the jury whether decedent was guilty of contributory negligence in not getting out of the way of the train.

3. ————: ————: **Fellow-servants.** A section foreman is a vice principal, and not a fellow-servant of a section hand.

4. **MASTER AND SERVANT: Contributory Negligence: Imminent Peril.** A servant is not guilty of contributory negligence as a matter of law in performing work which, although extra hazardous, cannot be said, as a matter of law, to have so plainly imperiled his safety that to perform it was not to exercise ordinary care.

5. **RAILOADS: Master and Servant: Death of Section Hand: Instructions.** In an action against a railroad company for the death of a section hand, resulting from injuries received in attempting to remove a track jack from before a moving train, in obedience to the foreman's order, the court instructed, at the instance of plaintiff, that if the jury found from the evidence that defendant's foreman negligently ordered decedent to remove the jacks while the train was rapidly approaching, and that this order, under the circumstances, was extra hazardous, but did not plainly imperil the life or limb of decedent, and that decedent obeyed the order and in so doing exercised ordinary care for his own safety, and that, in obeying and attempting to execute the order, he was injured and killed by reason of defendant's engine striking the jack, then plaintiff was entitled to recover. *Held,* that this instruction properly presented plaintiff's theory, under the evidence.

6. ————: ————: ————: **Contributory Negligence: Imminent Peril: Instructions.** In an action against a railroad company for the death of a section hand, resulting from injuries received in attempting to remove a track jack from before a moving train, in obedience to the foreman's order, defendant requested the court to instruct the jury that, although the foreman told decedent to remove the jack, and decedent knew that the train was rapidly approaching and that another employee had attempted to remove the jack after the order was given and failed to do so and abandoned the attempt because the train was so near as to make it dangerous, and that the other employee called to decedent to look out just as he left the jack, and thereupon decedent attempted to remove it and came so close to the train as to be in danger of being struck, then decedent was guilty of negligence. The court modified this requested instruction by requiring a finding that decedent knew, or by the exercise of ordinary care could have known, that the train was so near, or was approaching so rapidly, that there was no reasonable opportunity for him, with safety, to remove the jack before the train struck him. *Held,* that the modification was proper, inasmuch as, without it, a finding of contributory negligence would have been permitted although the danger was not so imminent that there was no reasonable

opportunity for decedent, with safety, to undertake to remove the jack.

7. MASTER AND SERVANT: Contributory Negligence: Imminent Peril. In order that a servant may be found guilty of contributory negligence, it is necessary that he knew, or by the exercise of ordinary care could have known, that the danger of doing the work was so imminent that there was no reasonable opportunity for him, with safety, to undertake its performance.

8. INSTRUCTIONS: Refusal: Inapplicability to Issues: Railroads. Where the issue, in an action for the death of a section hand by being struck while attempting to remove a jack from the track before an approaching train, was upon the negligence of decedent's foreman in ordering him to remove the jack, a requested instruction that the train employees were not bound to notify decedent of its approach and that it was his duty to keep out of the train's way, was properly refused as inapplicable under the issues.

9. ——: ——: Covered by Other Instructions. A requested instruction which is covered by other instructions, so far as it is correct, is properly refused.

10. ——: Nondirection: Measure of Damages: Death by Wrongful Act. In an action for death by wrongful act, plaintiff is entitled to submit his case to the jury without an instruction on the measure of damages.

11. DEATH BY WRONGFUL ACT: Damages: Discretion of Jury. In an action by minor children for their father's wrongful death, or by a wife for the death of her husband, under Sec. 5426, R. S. 1909, the jury are not confined to any exact measure in estimating damages, but have considerable discretion, which will not be interfered with by the courts, unless abused.

12. ——: ——: Elements. In an action, under Sec. 5426, R. S. 1909, by a minor child for the wrongful death of its parent, the child is entitled to recover for the loss of a parent's care, nurture, guidance, training and education, and these may be considered as having a pecuniary, as well as a moral, value.

13. ——: ——: ——: Instructions. In an action, under Sec. 5426, R. S. 1909, by minor children for the wrongful death of their father, defendant requested the court to instruct the jury that, in assessing plaintiff's damages, they should consider only the pecuniary loss to plaintiffs necessarily resulting from their father's death during their minority; that nothing could be allowed for injured feelings, and that the jury should only consider the loss of the father's support and

maintenance after his death, during their minority; that the verdict must be based upon the evidence in the case showing the value of such support and maintenance, and that the jury could not resort to speculation to determine such loss. *Held*, that the instruction was properly refused, inasmuch as it was susceptible of the construction that certain elements of damages, such as care, education, etc., were to be excluded, and was also susceptible of the construction that it was essential for plaintiffs to show what decedent's earnings were, in order to determine the value of plaintiff's loss of support and maintenance, which is not necessary.

14. ——: ——: **Evidence: Earning Capacity.** In an action, under Sec. 5426, R. S. 1909, by minor children for the wrongful death of their father, evidence that decedent was thirty years of age, in good health and strength, and had been employed by defendant railroad company as a section hand for eight or nine months, and that plaintiffs were quite young, two of them being before the jury, was sufficient to enable the jury to place a pecuniary value upon the loss suffered by them.

15. ——: ——: **Excessive Verdict.** In an action, under Sec. 5426, R. S. 1909, by minor children for the wrongful death of their father, who was thirty years of age at the time of his death and had been employed as a section hand, *held* that a verdict for $5000 was not excessive and that the appellate court would not interfere with the discretion exercised by the jury in awarding that amount.

16. **TRIAL PRACTICE: Argument of Counsel: Propriety.** In an action for the death of a section hand while attempting to remove a track jack from before a moving train, where the evidence tended to show that it was dangerous for the train to pass over the track with jacks under it and for that reason decedent's foreman ordered him to remove the jack, a remark by plaintiff's counsel, in his argument to the jury, that when decedent pulled the jack from under the track "trying to save the train" he did not have time to think, was not improper.

17. **APPELLATE PRACTICE: Misconduct of Counsel: Review: Necessity of Specific Objection.** Whether remarks made by counsel in his argument to the jury were erroneous will not be considered, on appeal, where the objection thereto did not point out the specific statement complained of or the specific ground of the objection.

18. **TRIAL PRACTICE: Argument of Counsel: Propriety.** In an action against a railroad company for the death of a section hand, resulting from injuries received in attempting to remove a track jack from before a moving train, in obedience to the

172 Mo. App. 41

foreman's order, *held* that a remark by plaintiff's counsel, in his argument to the jury, "Now, there should have been either signals, or the men on such a day— . . . ," was not prejudicially erroneous, although the absence of signals was not pleaded as a ground of negligence.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

Affirmed.

*J. L. Minnis* and *Geo. Robertson* for appellant.

(1) The court erred in refusing to instruct a verdict for the defendant at the close of the evidence for the plaintiffs and also at the close of all the evidence. (a) There was no proof that the foreman's order was negligent. (b) The proof was that Gentry did not obey the foreman's order but acted voluntarily sometime afterward and acted under totally different circumstances. (c) Gentry's negligence bars a recovery. Hutchinson v. Railroad, 195 Mo. 546; Stotler v. Railroad, 204 Mo. 619; Green v. Railroad, 192 Mo. 131; Schmidt v. Railroad, 191 Mo. 215; Boyd v. Railroad, 105 Mo. 391; Porter v. Railroad, 199 Mo. 82. (2) The court erred in giving plaintiff's instruction No. 1. This instruction was hypothesized upon the decedent's acting in obedience to the foreman's order. This is absolutely contrary to the evidence. (3) The court erred in refusing defendant's instruction No. III. This instruction submitted to the jury the inference that could be drawn from the evidence that Gentry was not acting in obedience to the foreman's order, but was acting voluntarily under different conditions and at a different time. To refuse it was to deny to defendant the right to have such theory presented to the jury. (4) The court erred in modifying defendant's instruction No. IV. (5) The court erred in refusing defendant's instruction No. V. Calcaterri v. Ioraldi, 123 Mo. App. 347; Parsons v. Railroad, 94 Mo. 286;

McGowan v. Steel Co., 109 Mo. 518; Leahy v. Davis, 121 Mo. 227; Hickman v. Railroad, 22 Mo. App. 344; Marshall v. Mines Co., 119 Mo. App. 270; Porter v. Railroad, 71 Mo. 66; Rains v. Railroad, 71 Mo. 164; Morgan v. Durfee, 69 Mo. 478; Nagel v. Railroad, 75 Mo. 653; Stokes v. Railroad, 91 Mo. 509; Parsons v. Railroad, 94 Mo. 286; McPherson v. Railroad, 97 Mo. 253; Schaub v. Railroad, 106 Mo. 74; Behen v. Transit Co., 186 Mo. 430; Coleman v. Land Co., 105 Mo. App. 254; Brunker v. Telephone Co., 112 Mo. App. 623; Howard v. Scarritt Estate, 161 Mo. App. 552.    (6) The court erred in permitting plaintiff's counsel to make an argument to the jury, outside of the pleadings, contrary to the instructions and contrary to the proof. McManamee v. Railroad, 135 Mo. 447; Gurley v. Railroad, 93 Mo. 450; Trigg v. Land & Lumber Co., 187 Mo. 227.

*E. C. Anderson* and *Barclay, Fauntleroy, Cullen & Orthwein* for respondent.

(1)  The proof in this case shows that the deceased acted in a moment of impending peril under the orders of his foreman suddenly given, and exposed his life to save the lives of others, and his conduct was neither wrongful nor negligent. Stephens v. Railroad, 96 Mo. 207; 5 Thompson on Negligence (2 Ed.), sec. 5435.  (2)  The defendant's instruction number 5, refused by the court, was clearly erroneous, because it excluded proper elements of damage and was so worded as to require the jury to find for the defendant unless there was direct and specific proof showing the value of support and maintenance.  Stoher v. Railroad, 91 Mo. 509; Gamache v. Tinfoil & Metal Co., 116 Mo. App. 596; Sippel v. Gas Light Co., 125 Mo. App. 81; Voelker v. Construction Co., 153 Mo. App. 1; Tilley v. Railroad, 29 N. Y. 252; McIntyre v. N. Y. Central Ry. Co., 37 N. Y. 291. (3) It is not the duty of a trial judge to

prepare instructions. The atttorney must prepare and present them to the court, and when the instructions presented are essentially erroneous it does not then devolve upon the court to prepare a correct charge. Barnett v. Swearinger, 77 Mo. App. 75; Nolan v. Johns, 126 Mo. 159; Coleman v. Drain, 116 Mo. 387; Tetherow v. Railroad, 98 Mo. 86; Railroad v. Randolph Town Site, 103 Mo. 468; Tyler v. Larimore, 19 Mo. App. 458; Jones v. Packet Co., 43 Mo. App. 407. (4) There is no merit in the assignment that the plaintiff's counsel committed error in their remarks to the jury, and under the case cited below, which has been affirmed by the Supreme Court, the alleged error is not saved properly. Torreyson v. United Railways Co., 145 S. W. 106.

ALLEN, J.—This is an action for death under section 5426, Revised Statutes 1909. The deceased, one Curtis Gentry, was struck and killed by one of defendant's train while working as a section hand in the employ of defendant. He left no wife surviving him, and the action is by his minor children, brought by their guardian and curator. Plaintiffs recovered and defendant prosecutes the appeal.

On November 30, 1909, the deceased, in the course of his employment by defendant, was engaged with other laborers in "surfacing" a portion of defendant's track, at a point about three-quarters of mile east of Centralia, Missouri, under the immediate supervision of one Joe Crowley, defendant's section foreman. The evidence shows that it was a very dark, foggy day, and that an approaching train could not be discerned more than one hundred and fifty yards away, and then only by the smoke from it. The train which struck and killed the deceased was an eastbound passenger train which was due at that point about 10:30 or 10:45 a. m., but which was between two and three hours late, and passed at about 1:20 p. m.

The evidence consisted solely of the testimony of one witness John Bybee, a co-laborer with deceased.

At the point where the section crew were working at the time, the rails of the track had been raised some three or four inches by "jacks." There were two of these jacks, standing opposite to each other, outside of the rails, and supporting the latter. They were operated by wooden handles about a foot or eighteen inches in length. While the rails were thus supported, and deceased and Bybee were on the south side of the track some sixteen feet west of these jacks and reaching down to pick up their shovels, defendant's foreman called to them saying, "Boys, here comes the train, get those jacks." At that time a passenger train approaching from the west was about one hundred and fifty yards away. The evidence is that the foreman, who was standing some little distance west, suddenly gave this order, speaking rapidly, and that deceased and Bybee at once made a rush for the jacks. Bybee was in the lead, reached one of the jacks just ahead of deceased, "tripped" it, and stepped between the rails and tried to remove the jack. The jack in question had a small plate or foot that went under the rail and which raised the latter. When the witness tripped it—i. e., operated it so as to release the rail—some little gravel dropped under it, and owing either to this or to rust on this foot or plate, it was difficult to remove it from beneath the rail. Bybee testified that when he tripped the jack and caught hold of it to remove it, deceased was immediately behind him, just outside of the track, on the south side thereof; that, seeing the danger that he was in, Bybee let loose of the jack and jumped from between the rails; at the same time calling out to deceased to "look out." Just as Bybee let loose of the jack, deceased grabbed it and tried to get it out. According to the testimony of Bybee, when he released his hold upon the jack and jumped, deceased was in the very act of grabbing it;

and the witness testified that what they did at this time was done very hurriedly—as the witness said "in the snap of your finger." Just as deceased got hold of the jack, the train struck it, causing the wooden handle thereof to strike deceased, whereby this handle was driven through his head and he was instantly killed.

It appears that the jack opposite to the one that deceased was trying to remove, and which was sustaining the other rail, was not removed either; that one Clark attempted to do so but did not succeed in removing it. The train, which according to the testimony was running between fifty and sixty miles an hour, passed over this portion of the track and ran, as the witness said, for nearly a quarter of a mile before coming to a stop.

The deceased was about thirty years of age, and his health and strength good. The exact ages of the three minor children do not appear. The witness testified that they were quite young; one being, as he thought, five or six years of age. Two of them were present at the trial. Defendant offered no evidence, beyond recalling the one witness who testified for plaintiffs, for a further brief examination.

At the close of plaintiff's case defendant offered an instruction in the nature of a demurrer to the evidence, which was refused by the court; as was a like instruction offered by defendant at the close of the entire case. The cause was submitted to the jury upon two instructions on behalf of plaintiff, only one of which we shall need to notice, as the other simply defined the terms "ordinary care" and "negligence." The plaintiffs asked no instruction on the measure of damages. Four instructions were offered by defendant, two of which were refused by the court, and two modified by the court and given as modified. The jury returned a verdict for plaintiff in the sum of $5000.

Defendant urges that its demurrer to the evidence should have been sustained for the reason that the evidence, as defendant claims, conclusively shows that deceased, in grabbing the jack when he did, was acting, not in obedience to the foreman's order, but voluntarily, some time after the order was given, and under different circumstances; and that in so doing he was guilty of such negligence as to bar a recovery by plaintiffs.

A careful review of the evidence, which is exceedingly brief, convinces us that it does not sustain defendant's theory that plaintiff was not acting under the foreman's order when he grabbed the jack. With the train approaching at the rate of speed above mentioned, a slight computation will show that it would take only from five to six seconds, from the time that it was first discovered, for it to reach the jacks. In this brief interval deceased and his co-laborer, acting under the order of defendant's foreman, were endeavoring to reach and remove one of these jacks. Defendant's view of the evidence is that deceased made no effort to execute the order until Bybee jumped, and then voluntarily "rushed in" immediately in front of the train. It is true that the witness testified that when he had hold of the jack, deceased was outside of the rails, but it does not appear that he waited until after Bybee jumped to make an effort to execute the order. On the contrary it appears that he was very near the jack when Bybee jumped and seeking to help the latter remove it; for it seems that he was in the very act of grabbing it when Bybee let loose of it and jumped. Under these circumstances the court could not properly have declared, as a matter of law, that the act of deceased in grabbing the jack at that instant was not in obedience to the foreman's order, which had caused plaintiff to rush to the jack for this very purpose.

Also the question of the negligence of deceased was properly referred to the jury. The foreman occupied the position of vice-principal, and was not a fellow-servant with deceased. He ordered deceased and others to perform a task, extra hazardous indeed, but one which cannot be said, as a matter of law, to have so plainly imperilled deceased's life that to undertake to obey was not to exercise ordinary care. [See Stephens v. Railroad, 96 Mo. 207, 9 S. W. 589.] Neither can it be held that deceased was negligent, as a matter of law, in not getting out of the way of the train, as Bybee did, or in not heeding the warning given by the latter as he jumped. Whether deceased realized how imminent the danger was, or could so have known by the exercise of ordinary care, was for the jury to determine under the evidence. As to the failure of deceased to heed the warning, the evidence shows that he was in the act of grabbing the jack when this warning was given, and it does not show that, after it was given, there was sufficient time to enable him to get out of the way and avoid being struck. We think that the demurrer was properly overruled.

The instruction complained of, given on behalf of plaintiffs, told the jury, in substance, that if they found from the evidence that defendant's foreman negligently ordered deceased to remove the jacks in question, while the train was rapidly approaching, and that this order under the circumstances was extra hazardous, but did not plainly imperil the life or limb of deceased, and that deceased obeyed the order, and in so doing exercised ordinary care for his own safety, and that, in obeying and attempting to execute the order, deceased was injured and killed by reason of defendant's engines striking one of the jacks, then plaintiffs were entitled to recover.

This instruction is similar to one approved in the Stephens case, supra, and it is not urged that it is erroneous except for the reason that it is based upon

the theory that deceased acted throughout in obedience to the foreman's order; whereas defendant insists that the action of deceased in taking hold of the jack when he did was not in obedience to the order of the foreman, but materially later, of his own volition, and at his own risk. What we have said above practically disposes of the assignment of error with respect to this instruction, and it need not be repeated. What deceased did during the brief interval of time in question, was done in great haste, under excitement, and the jury might well find that all of his acts during this time were done in obedience to the foreman's order and in an effort to execute the same. If the case was one for the jury at all, then this instruction was proper as presenting the plaintiff's theory of the case.

Of the two instructions requested by defendant and given by the court after being modified, one need not be noticed, as appellant's counsel expressly say that they make no point in regard to this instruction. The other, as offered by the defendant, was as follows:

"The court instructs the jury that although the foreman told the decedent to remove said jack and the decedent knew said train was approaching rapidly and in near proximity and that witness Bybee had attempted to remove said jack after said order was given and had failed to remove it because it was caught and Bybee abandoned the effort to remove the jack because said train was so near it was dangerous to attempt further to remove the jack and the decedent knew of the near approach of the train and that Bybee had gotten out of the way and Bybee had said to decedent to "look out," just as he, Bybee, left the jack and that thereupon decedent attempted to remove the jack and came so close to the train as to be in danger of being struck by either the train or the jack when it was struck by the train and was so struck and killed, then decedent was guilty of such negligence on

his part as precludes the plaintiffs of a recovery and you will find for the defendant.''

The court refused to give the instruction in this form but added to it the following: ''Provided you find from the evidence that the decedent knew, or by the exercise of ordinary care on his part could have known, that the train was so near or was approaching so rapidly that there was no reasonable opportunity for him—with safety to himself—to remove the jack before the train would strike the jack.''

It is insisted by defendant that the modification of this instruction was error for the reason that it ''put the instruction on the theory that the decedent was acting in obedience to the foreman's order and not of his own volition;'' that it might be reasonably inferred from the evidence that deceased was not acting in obedience to the order, and that defendant was entitled to have this inference passed upon by the jury. The instruction however does not appear to present the theory that deceased was not acting under the foreman's order (if indeed the evidence can be said to support any such theory) but seems to proceed rather upon the theory that it was negligence on the part of the deceased to undertake to carry out the order after it had become obviously dangerous for him so to do, and after warning of such danger. In any event, we think that the court committed no error in thus modifying the instruction. Without the modification, it told the jury that, if certain facts were found, deceased was negligent; ignoring that it was necessary for the jury to find that deceased knew, or by the exercise of ordinary care could have known, that the danger was so imminent that there was no reasonable opportunity for him, with safety, to undertake to remove the jack, before the jury could find him guilty of negligence.

Of defendant's two instructions refused by the court, one proceeded very much along the same lines

as the instruction we have just discussed above, except that it told the jury that defendant's employees in charge of the train were under no obligation to notify deceased of the approach thereof, and that it was the duty of deceased to keep out of the way of the train. This portion of the instruction just referred to was not applicable to the issues, for the case proceeded, not upon the theory of negligence in failing to notify deceased to get out of the way of the train, but upon the theory of a negligent order to perform an act requiring him to place himself in a dangerous position. The remainder of the instruction presented nothing not covered by the instruction set out above, given for defendant after being modified. There was no error in refusing this instruction.

The remaining instruction which the court refused to give at the request of the defendant pertained to the measure of damages. As we have said, plaintiffs asked no instruction on this subject. Defendant moved the court to formulate and give such an instruction. The court declined so to do but offered to consider any such instruction asked by defendant, and to give the same if correct. The instruction offered by defendant and refused by the court was as follows:

"The court instructs the jury that if you find for the plaintiff in this case, then in assessing the amount of damages you can take into consideration only the pecuniary loss to the plaintiffs necessarily resulting to them from the death of their father during their minority; that nothing can be allowed to them for solace or injury to the feelings or affections and that you will take into consideration only the loss of their father's support and maintenance from the time of his death during their minority and that your verdict must be based upon the evidence in the case showing the value of such support and maintenance and you cannot resort to guess, conjecture or speculation to determine such loss, but it must be determined from

the evidence in the case only, not in excess of ten thousand dollars.''

The appellant assigns as error the refusal to give this instruction, insisting that it properly covers all the elements of damage resulting to the minor children of deceased by reason of the latter's death.

Plaintiffs of course were entitled to submit their case to the jury without an instruction on the measure of damages, if they saw fit so to do. And appellant concedes that it could not require the court, upon motion to prepare and give an instruction. The instruction prepared and offered by defendant sought to restrict plaintiffs' recovery to the pecuniary value of their father's ''support and maintenance'' during their minority; the verdict to be based upon evidence showing the value thereof. The question then is, whether this confined plaintiffs' recovery within too narrow limits, justifying the trial court in refusing the instruction.

It is well established in this State that where minor children sue for damages for the death of a father, or a wife for the death of her husband, the jury is not confined to any precise calculation as to the amount of the loss, but is vested with considerable discretion in determining the same; and that the courts will not interfere with the exercise of such discretion, unless it is abused. [Stoher v. Railway, 91 Mo. 509, 4 S. W. 389; Gamache v. Tin Foil & Metal Company, 116 Mo. App. 596, 92 S. W. 918; Voelker v. Construction Co., 153 Mo. App. 1, 131 S. W. 907.] It is equally well settled that in actions such as this the physical, mental and moral training of a child by its parent is to be considered as having a pecuniary value in estimating the loss which the child sustains by reason of the parent's death; that the child is entitled to recover for the loss of a parent's care, nurture, guidance, training and education, and that these may be considered as having a pecuniary, as well as a moral,

value. [Stoher v. Railway, supra; Sipple v. Gas Light Co., 125 Mo. App. 81, 102 S. W. 608; Gamache v. Metal Company, supra, and authorities cited.]

It is strongly urged, however, by learned counsel for appellant that the words "support and maintenance" are broad enough to cover all of the elements of loss for which plaintiffs were entitled to recover, including the loss of the care, education, etc., of the father. And if this be not true, counsel say that this objection to the instruction may be well taken. In support of this contention we are cited to authorities construing these words as used, in particular instances, in wills, statutes, etc. But in dealing with the expression "support and maintenance" as used in this instruction, we are not to consider the words in the light of the construction that may have been placed upon them in instances such as are referred to by counsel. The language of the instruction must be considered from the standpoint of what the jury would have understood it to mean. In this connection it is pertinent to ask what the purpose and object of defendant was in requesting the instruction in this form, i. e., limiting the recovery to the loss of "support and maintenance," without defining these terms or otherwise making the instruction clearly include all proper elements of damage, unless it were to confine the recovery to the monetary value of the support of the father, in the sense merely of supplying food, clothing and shelter. We have no doubt that the jury, construing the terms in question in their usual and everyday sense, would understand that other elements of loss, such as care, education, etc., were intended to be excluded.

Furthermore, we think it quite reasonable to suppose that the jury would infer from this instruction that it was necessary for plaintiffs to show what the earnings of deceased were, in order to determine the value of plaintiffs' loss of support and maintenance.

This it was unnecessary for plaintiff to do. [Stoher v. Railway, supra; Sipple v. Gas Light Co., supra; Voelker v. Construction Co., supra; Haines v. Pearson, 107 Mo. App. 481, 81 S. W. 645.]  It is true that the instruction does not in express terms so declare. It does, however, tell the jury that their "verdict must be based upon evidence in the case showing the value of such support and maintenance," and that the jury "cannot resort to guess, conjecture, or speculation to determine such loss, but it must be determined from the evidence in the case only." The argument advanced in support of this portion of the instruction is that the verdict must necessarily be based upon evidence in the case, and that the jury is not entitled to indulge in mere conjecture and speculation. The language used, however, might well be interpreted by the jury to mean that there must be direct and positive proof of the value of such support and maintenance, and that without such proof the jury has no discretion to place a pecuniary value thereon. This would seem to be the purpose of employing this language in the instruction, and we think its effect would be but to mislead the jury. From it the jury might well believe that since the evidence did not show what the earnings of deceased were, there was no evidence "showing the value of such support and maintenance;" whereas the jury should be left free to exercise a considerable discretion in arriving at the amount of the verdict, taking into consideration all the facts and circumstances in evidence. We are of the opinion that the lower court committed no error in refusing this instruction.

It is true that the evidence was very meager from which to determine the loss occasioned to these plaintiffs by the death of their father. It was shown merely that he was a man thirty years of age, in good health and strength, employed by defendant as a section hand, and that he had been so employed for eight or nine

months. It was shown that the children were quite young; two of them being before the jury. From this evidence, however, we think that the jury might properly place a pecuniary value upon the loss suffered by these plaintiffs. We have no reason to think the verdict excessive, and have no disposition to interfere with the discretion of the jury in arriving at it.

Another assignment of error is that plaintiffs' counsel made certain improper remarks in argument before the jury. One of these was the following remark by Mr. Anderson, of counsel for plaintiff: "Gentlemen, when Mr. Gentry pulled the jack from under the track, trying to save the train, he didn't have time to think about how close it was, and—." This was objected to by defendant's counsel. The objection was overruled and defendant excepted. We see nothing improper in this remark of counsel. The evidence shows that it was considered dangerous for a train to pass over the track with these jacks beneath the rails, and it was evidently for this reason that the order was given. It is true that deceased did not pull the jack from under the track, but he was in the act of endeavoring to do so when killed, and we do not see how this remark could have been prejudicial to defendant.

Another remark objected to was made by Mr. Cullen, representing plaintiff. It is not necessary however to set out the language used, nor comment upon it, as the objection did not point out the specific statement complained of, nor call the attention of the trial court to the specific grounds upon which the objection was based. It need not therefore be considered. [Torreyson v. Railways Co., 164 Mo. App. 366, 145 S. W. 106; State v. Phillips, 233 Mo. 299, 135 S. W. 4; State v. Ruck, 194 Mo. 416, 92 S. W. 706.]

Another remark objected to, made by Mr. Cullen, appears in the record as follows: "Now, there should have been either signals, or the men on such a day. . . . " Defendant's counsel interposed an objection

saying, "We object to that argument about signals being out;" and defendant preserved an exception to the overruling of this objection. The record does not show that the sentence in question was ever completed. The ground of the objection doubtless was that the right of recovery was not predicated upon the failure· to have out signals on the day in question, but this was not specifically stated; and we may say further that, from what appears before us, we do not see that this remark of counsel could well have been so prejudicial to the rights of defendant as to be ground for reversal.

We have very carefully examined the record, and are unable to see any reversible error therein. The judgment of the circuit court is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.