MARGARET MOST, Respondent, v. GOEBEL CONSTRUCTION COMPANY, a corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed May 7, 1918.

1. **MASTER AND SERVANT: Injury to Servant: Master's Negligence: Question for the Jury.** In an action by the wife of a servant for personal injuries resulting in his death, where the facts and circumstances appear to afford reasonable inferences of the masters negligent fastening of a chain supporting a scaffold which fell, causing such death, the question of the master's negligence was one for the jury.

2. ———: ———: ———: Scaffold-Structure: Construction of Statute. A platform sixty feet from the ground, supported at one end by chains swinging from the roof, the other end resting on poles running along the side of the building, and furnished by the master for the use of his workmen while erecting or repairing a building is a scaffold or structure within the meaning of section 7843, Revised Statutes of Missouri 1909, which requires all scaffolds or structures used in or for the erection, repairing or taking down of any kind of building, shall be well and safely supported, and so secured as to insure the safety of persons working thereon or passing under or about the same, against the falling thereof.

3. ———: ———: ———: Question for the Jury. Under such statute, whether the building on which deceased was employed as a cement finished was being erected or repaired, *held* a question for the jury.

4. **APPELLATE PRACTICE: Review: Demurrer to Evidence.** Where, at the close of plaintiff's case upon the overruling of the defendant's demurrer to the evidence, it introduced no evidence, plaintiff's evidence to sustain his case must be accepted upon review as true, together with all reasonable inferences and deductions which may be drawn therefrom.

5. **MASTER AND SERVANT: Fellow Servants: Cement Finisher and Carpenter not Fellow Servants.** Where the testimony is uncontradicted that deceased was a cement finisher, and was employed in that capacity, and that he had nothing whatsoever to do with the building of a scaffold, nor with hanging or fastening same to the supports on the roof, nor with the moving thereof from time to time as the progress of the work necessitated but that such work was done by carpenters, the deceased was not a fellow servant of the carpenters in the building, fastening, or moving of the said contrivance, though all worked together upon it after it was built and at various times after it was moved from place to place in the progress of the work for men are frequently fellow servants when working in one capacity, and yet not fellow servants with reference to their work in another capacity.

6. **APPELLATE PRACTICE: Harmless Error.** An assignment of error that an instruction given for plaintiff proceeded upon the theory that a chain supporting the scaffold or structure was fastened to the roof, when the petition averred it was negligently attached to a timber on the roof, is purely technical, and without real merit.

7. **DAMAGES: Excessive Damages: Loss of Husband and Father.** Where plaintiff's husband was a cement finished at the time of his decease, and left surviving him plaintiff and their four minor children, a verdict of $7500 is not excessive, although the evidence failed to show what the earnings of deceased were at the time of his death.

199 M. A.—22

Appeal from the Circuit Court of the City of St. Louis. —*Hon. William M. Kinsey*, Judge.

AFFIRMED.

*Leahy, Saunders & Barth* for appellant.

(1) The demurrer in this case should have been sustained: (1) Because there was no evidence of defendant's negligence. (2) Because the statute, Sec. 7843, R. S. 1909, which was the sole ground of negligence alleged in the petition, does not apply to a swinging, movable platform like the one in the instant case. It was "transitory" and "shifting" in character and its safety was necessarily committed to the workmen in charge. Livingood v. Lead & Zinc Co., 179 Mo. 229; Anderson v. Missouri Granite & Construction Co., 178 S. W. 737; Deiner v. Sutermeister, 266 Mo. 505, 514-19. (3) Because the *res ipsa loquitur* doctrine does not apply and because it was not pleaded and not relied upon. Section 7843, R. S. 1909; Deiner v. Sutermeister, 266 Mo. 505, 514-19; White v. Montgomery Ward & Co., 191 Mo. App. 268, 270; Williams v. Ranson, 234 Mo. 55, 75; Forbes v. Dunnavant, 198 Mo. 193, 210; Hedrick v. Kahmann, 174 Mo. App. 57. (4) Because Most, decedent, and Clark and his helper, Cordes, who erected the swinging, movable platform, and moved it from time to time, were fellow servants, and the negligence of Clark and Cordes, if admitted, would bar any right of recovery on the part of plaintiff. Henson v. Stave Co., 151 Mo. App. 224, 235; Kellerman v. Telephone Co., 189 Mo. App. 506; Herbert v. Wiggins Ferry Co., 107 Mo. App. 287; Bowne v. Railroad, 95 Mo. 268, 277; Kiffin v. Wendt, 57 N. Y. Sup. 109; Maher v. McGrath (N. J), 33 Atl. 945.

(2) (1) The instruction given for plaintiff on the right of recovery· was not based upon the evidence and was outside of the scope of the pleadings and, therefore, was erroneous. It proceeded upon the theory that the chain in question was "fastened to the roof," when

there was neither proof nor pleading to support it, and the averment in the petition was that the chain was negligently attached to a timber on the top of the roof of the building. (2) The instruction on the measure of damages was erroneous because the only proof in the record was of marriage and death, with a widow and four children surviving. In any event a verdict for seventy-five hundred dollars, based upon this evidence, was grossly excessive.

*Bartley & Douglass* for respondent.

(1) The court did not err in overruling the demurrer offered by the defendant as the close of plaintiff's case. (a) In passing on a demurrer to plaintiff's evidence the court must consider the evidence introduced by plaintiff as true, and make every finding and deduction in her favor which the jury would have been warranted in making. Meenach v. Crawford, 187 S. W. 879, 882; Williams v. Railroad, 257 Mo. 112, 52 L. R. A. (N. S.) 433; Grouch v. Heffner, 184 Mo. App. 365, 372; Irwin v. United Railways Co., 191 S. W. 1130. (b) If the facts introduced in evidence bearing on the issues are disputed, and admit of different conclusions and inferences it must be left to the jury to decide the question of negligence. Powers v. Transit Company, 202 Mo. 267, 280, and citations; Yost v. Cement Company, 191 Mo. App. 422, 432. (c) Where defendant offers a demurrer to plaintiff's evidence, and stands on it, then the evidence offered by plaintiff to sustain his case, together with all reasonable inferences and deductions to be drawn therefrom, must be accepted as true. Parker-Washington Co. et al. v. Dennison, 249 Mo. 449, 469; Gerardi v. Gardner et al., 255 Mo. 538, 562-3; Clark v. Railroad, 234 Mo. 396, 418. (d) Negligence need not be shown by direct or positive proof, but may be reasonably inferred from the facts and circumstances in evidence, and this is true irrespective of the presumption raised by the *res ipsa loquitur* doctrine. Capehardt v. Murta et al., 165 Mo. App. 55.

(e) Section 7843, R. S. 1909, includes scaffolds such as the one described in the present case. Williams v. Ransom, 234 Mo. 55; Deiner v. Sutermeister, 266 Mo. 505, 517-18; Jones v. Gamble, 140 N. Y. Supp. App. Div. 733. (f) This section (7843, R. S. 1909) · is highly remedial and is to be liberally construed in favor of the safety of the life and limbs of employees, as that is the object of the statute. Session Acts 1917, page 324; See Title Laws: Common Law and British Statutes; Henderson v. Heman Construction Company, 199 S. W. 1045 (not yet reported). (g) Where a statute or ordinance is violated and the failure to comply with such statute or ordinance is the proximate cause of an injury the doctrine of *res ipsa loquitur* applies. Burt v. Nichols, 264 Mo. 1; Stewart, Admr., v. Ferguson, 164 N. Y. 553; Lorenzo v. Faillare, 132 N. Y. Sup. App. Div. 103; Nixon, by Etc., v. Thompson-Scarrett Co., 131 N. Y. Sup. App. Div. 152. (h) Where the master undertakes the building of a scaffold for a servant to work upon, then this is a non-delegable duty of the master. See McGrath v. Fogel, 182 S. W. 813; Cooney v. Laclede Gas Light Company, 186 Mo. App. 156. And a cement finisher who works on this scaffold is not a fellow servant with the man who built the scaffold. McGrath v. Fogel, 182 S. W. 813, supra. (2) (a) Instruction No. 1 given by the court is a correct declaration of the law. Williams v. Ransom, 234 Mo. 55; See instruction on middle of page 67 given by the court. (b) The instruction on the measure of damages correctly declared the law.

BECKER, J.—This is an action by Margaret Most, widow of Fred Most, against the Goebel Construction Company, a corporation, for damages suffered by plaintiff as the result of the death of her husband, Fred Most, while employed by the defendant company as a cement finisher. Judgment resulted in favor of plaintiff and against the defendant in the sum of $7500 from which the defendant brings this appeal.

Plaintiff's second amended petition contains appropriate averments as to the relationship of plaintiff to her deceased husband and charges that the Goebel Construction Company is a Missouri corporation. The petition further avers: "On or about the 5th day of August, 1915, the defendant was engaged in repairing a building at or near 3757 Chouteau avenue in the city of St. Louis, and that on said date plaintiff's deceased husband was in the employ of the defendant and engaged in erecting or making repairs on said building, from a scaffold erected and furnished him by the defendant upon which to stand while doing said work; that said scaffold was about sixty feet high and supported by chains or ropes, which swung from the roof of said building, and were attached to said scaffold; that said chains or ropes which supported the scaffold were secured to the roof of said building by passing said chains or ropes through the holes in the roof and fastening them to or around pieces of timber about 4 x 4 x 18 inches, which said timbers were of sufficient size to prevent being pulled through the holes in the roof through which said chains passed, and of sufficient strength to hold said scaffold."

"Plaintiff further says that on said date, while her deceased husband was at work upon said scaffold in the regular scope of his employment, that one of the chains or ropes became unfastened from the piece of timber to which it was fastened as aforesaid, and caused said scaffold to give way with her said husband and precipitate him to the floor below, from which fall he sustained injuries that caused his almost immediate death."

"Plaintiff further says that the death of her deceased husband was directly caused by the negligence of the defendant in this, to-wit: That on the 5th day of August, 1915, and for a long time prior thereto, there was in force in the State of Missouri, section 7843 of the Revised Statutes for the year 1909, as follows, to-wit:

"All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon. All persons engaged in the erection, repairing or taking down of any kind of building shall exercise due caution and care so as to prevent injury or accident to those at work or near by."

"That at the time the defendant negligently failed to have the scaffold upon which it directed plaintiff's deceased husband to work and which fell and caused the death of plaintiff's deceased husband, well and safely supported and so secured as to insure the safety of her deceased husband while at work thereon, but had one of the chains or ropes which supported the scaffold so negligently fastened to or around the piece of timber aforesaid as to cause it to come loose, thereby causing the scaffold to give way and precipitate plaintiff's deceased husband to the floor, from which he received injuries that caused his death."

"Wherefore plaintiff prays judgment against the defendant for the negligent killing of her husband as aforesaid in the sum of ten thousand ($10,000) dollars, together with her costs." Defendant's answer was a general denial.

The case was tried before the court and jury. At the close of plaintiff's case the defendant offered an instruction in the nature of a demurrer to the evidence, which the court overruled. The defendant stood on its demurrer and did not offer any testimony.

Plaintiff's evidence shows that she is the widow of Fred Most and that there were four children born of the marriage, living at the time of his decease, three boys aged respectively 2, 13 and 18 years, and a girl aged 6 years. That on the day in question plaintiff's husband together with three other men named

Clark, Menschensky and Propoulenis were working on a so-called scaffold suspended from the ceiling of a building belonging to the St. Louis Independent Packing Company, which so-called scaffold was being used to take down the false work on which the concrete roof had been poured, and to smooth the cement work which formed the ceiling. The cement roof was sustained by large iron beams, the concrete forming the ceiling in between the several iron beams being referred to as panels. The so-called scaffold was first erected and swung from the roof at the east end of the building and as each panel, namely the space between the big iron beams, was fininshed, the so-called scaffold was moved to the next panel west. The so-called scaffold was made of heavy planks, one end of the planks resting on poles running along the side of the building, and the other part of the planks being supported by three ropes attached to three block and tackle arrangements which were suspended from three chains each of which ran thrugh an iron pipe for which an appropriate opening had been left in the concrete which formed the roof. Each of these chains were tied around a piece of wood 4 x 4 x 18 inches which rested for its support on the roof. This so-called scaffold had been built by a carpenter named Clark assisted by one Cordes, and up to the time it fell it had been moved four or five times, each time by said Clark and his helper. There was abundant testimony that the deceased, Most, had nothing to do either with the original constructing of the so-called scaffold nor with the fastening of same to the roof, nor the moving thereof from one panel to another. This so-called scaffold was about thirteen feet in width and thirty-five feet in length and was suspended at a heighth of about sixty feet above the floor or basement of said building, which building had no floors in it so that in the event of the fall of said so-called scaffold there was a drop of sixty feet to the floor or basement. The purpose of the so-called scaffold was to furnish a platform to enable the men to remove the false work or moulds from the concrete ceiling and

to enable the cement to be smoothed properly and finished. That while said Most was on the scaffold engaged in finishing or smoothing the cement and while Clark, Menschensky and Propoulenis were working on the scaffold beside him, the scaffold fell, precipitating the men at work thereon to the basement resulting in injuries to the said Most from which he died.

One Krause, a witness for plaintiff, testified that he was the superintendent in charge of the construction of the St. Louis Independent Packing Company, on whose building the work was being done when the so-called scaffold fell; that he had examined the so-called scaffold shortly after the accident and found the west swinging support of the center had become unfastened somehow and dropped down and precipitated the men on the scaffold into the cellar; that the lower end of the scaffold still had hanging to it the eyebeam, block, pulley and chain which had formerly passed through the concrete roof; that the chain was hanging to the end of the block. He further testified that he went to the roof of the building about an hour after the accident; that he did not find any piece of chain on the roof but he saw where the chain had been fastened; that on either side of the hole in the roof through which the chain had passed lay two pieces of 4 x 4 and across them and on top of them and immediately over the center of the hole lay another piece of 4 x 4; that he examined the chain which was hanging down and found that it had not been broken, "there wasn't even a scratch on the chain for I examined it." He further stated that he had looked about to find any broken pieces of chain but had found none; that the other two chains which were used for supporting the so-called scaffold were still intact when he was on the roof an hour after the accident and that each of them was fastened to a piece of timber 4 x 4 with a half hitch in the end of the chain and then the ends of the chain were wired together; that these said two chains were immediately down on top of the roof, whereas the

blocks which he found over the hole through which the chain which had become unfastened or broken had the 4 x 4 lying across two 4 x 4s which lay next to the hole, so that this particular block to which the chain had been fastened was raised 4 inches above the roof; that he saw no wire on the roof and that the chain that had given way and was hanging to the scaffold had no hook in that end of it which had gone through the roof.

One Flaherty, a witness for plaintiff, testified that he was a police officer and went on the roof shortly after the accident and his testimony corroborated that of witness Krause with reference to the condition as testified to by him, and in addition he testified that the 4 x 4 immediately over the hole in the roof showed marks upon it that "I would judge looked like a chain had been on it; I couldn't swear that a chain had been on it but it looked that way to me, but I couldn't swear to it." This quoted statement of the witness was admitted without any objection on the part of defendant.

After a careful examination of the testimony adduced by plaintiff we are constrained to hold that sufficient facts and circumstances appear to afford reasonable inferences of negligence in the manner of the fastening of one of the chains which supported the contrivance referred to by counsel for both plaintiff and appellant as well as the trial judge throughout the trial below, as a scaffold, and that said chain became loose and thereby caused the contrivance to give way. It therefore results that we hold the case was one for the jury and the court properly overruled defendant's demurrer offered at the close of plaintiff's case.

The point is made by appellant that a contrivance constructed and used in the manner disclosed by the record in this case does not fall within the inhibition of the language of section 7843, Revised Statutes of Missouri, 1909, which requires "all scaffolds or structures used in or for the erection, repairing or taking down of any kind of building, shall be well and safely supported, and so secured as to insure the safety of

persons working thereon or passing under or about the same, against the falling thereof . . . " The point is without merit. "It is apparent that our Legislature had in mind such structures as those upon which men stood and worked—the context, we think shows this . . . . It is clear that it does include by the use of the words 'scaffolds or structures' all stationary platforms, staging, threstles, and *other similar* false work used in erecting or in tearing down buildings of any kind, *in addition* to the contrivances connoted by the use of the general words *scaffold* . . . . Moreover as stated above, we think it is obvious from the very context of said section 7843 that in the clause 'scaffold and structures' the last word is *ejusdem generis,* and said clause is to be construed as meaning scaffolds, or contrivances and appliances of similar use and nature to scaffolds, viz: platforms, staging, trestles of whatever kind, and ladders supporting planks." [Deiner v. Sutermeister, 266 Mo. 505, l. c. 518, 178 S. W. 757, and cases there cited.] We hold the contrivance provided by defendant for use of the deceased to be within the purview of the said statute.

Appellant further argues that the character of work for which the contrivance was used and the labor the deceased was engaged in at the time he met with the injuries which caused his death were not of the character as would fall within the terms of the statute which applies to "all scaffolds or structures used in or for the erection, repairing or taking down of any kind of building."

It is argued that "the deceased, according to the evidence was engaged in smoothing the cement. He was certainly not erecting anything, unless it could be said that a painter, in applying paint on the wall, is erecting a structure. It was equally certain that he was not repairing anything, and there was neither allegation nor proof that he was taking down any kind of building. His fellow servants were removing the falsewood forms under the poured concrete roof. It is, therefore, clear that as to him, the statute does not

apply, and he could base no right of recovery thereon.''
Clearly appellant attempts to put too narrow a con-
struction upon the statute. The testimony is sufficient
to submit to the jury the question as to whether the
building on which the deceased was employed as a
cement finisher was being erected or repaired. It must
be remembered that defendant offered a demurrer at
the close of plaintiff's case and upon its demurrer
being overruled stood thereon and declined to adduce
any evidence; in such instances the evidence offered
by plaintiff to sustain his case must be accepted as
true, together with all reasonable inferences and de-
ductions that may be drawn therefrom. We rule this
point against appellant.

We come next to the assignment of error that
Most, the deceased, and Clark, and his helper Cordes,
who erected the contrivance and who moved it from
time to time, were fellow servants and that therefore
the negligence of Clark and Cordes, if admitted, would
bar a right of recovery on the part of plaintiff.

The testimony is uncontradicted that Most was a
cement finisher and was employed in that capacity and
that he had nothing whatsoever to do with the building
of the contrivance nor with hanging or fastening same
to the supports on the roof, nor with the moving thereof
from time to time as the progress of the work
necessitated. In fact it is uncontroverted that Clark
who was a carpenter, together with his helper Cordes,
did this work. By no stretch of the rule of the fellow
servant law can it be applied to the facts here before us
and we therefore hold that the deceased was not a
fellow servant of Clark or his helper Cordes in the
building, fastening or moving of the said contrivance.
And this is true though the deceased and Clark and
Cordes all worked together upon the contrivance after
it was built and at various times after it was moved
from place to place in the progress of the work; for
men are frequently fellow servants when working in
one capacity, and yet not fellow servants with refer-
ence to their work in another capacity. [White v.

Montgomery, Ward & Co., 191 Mo. App. 268, l. c. 277, 177 S. W. 1089; McGrath v. Fogel (Mo. App.), 182 S. W. 813.]

Complaint is made of an instruction given for plaintiff in that it proceeded upon the theory that the chain in question was "fastened to the roof" when the averment in the petition was that the chain was negligently attached to a timber on the top of ·the roof of the building. One cannot read the record but be convinced that the matter complained of as error is more apparent than real. We view this assignment of error as purely technical and without real merit.

Complaint is made that the verdict, namely, $7500, is excessive when viewed in light of the testimony in the case. Deceased was a cement finisher at the time of his decease and left surviving him his widow (plaintiff herein) and four minor children. This being a death case we cannot agree that the verdict should be limited to nominal damages because the evidence failed to show what the earnings of the deceased were at the time of his death. [See Gentry v. Railroad Co., 172 Mo. App. 638, 156 S. W. 27, and cases there cited.]

Finding no prejudicial error in the record and the judgment being for the right party it is accordingly affirmed. *Reynolds, P. J.,* and *Allen, J.,* concur.