ALBERT F. BENNETT, Respondent, v. G. T. O'MALEY TRACTOR CO., et al., Appellants.

In The Kansas City Court Of Appeals, March 6, 1922.

1. **MASTER AND SERVANT: Under a Statute Governing the Use of Scaffolds the Word Building Includes a Model Repair Shop.** Under section 6802, Revised Statutes 1919, regulating the use of scaffolds in the erection or taking down of a building, the word "building" which is defined to be an edifice, designed to stand more or less permanently and covering a space of land for use as a dwelling, storehouse, factory, shelter for beasts, or some other useful purpose, includes a model repair shop, a structure intended for some useful purpose and in this respect it was a building, within the meaning of the statute.

2. ————: **Scaffold Used in Removing Pulley from Shaft Held to be Within Statute.** A scaffold used by employees in removing a pulley from a shaft *held* to be a scaffold or structure within meaning of section 6802, Revised Statutes 1919.

3. ———: Negligence: Issue as to Whether Employee Participated in Construction of Scaffold Held for Jury. In an action for injuries sustained by employee falling as result of breaking of scaffold issue as to whether employee participated in the construction thereof was one of fact for jury's determination and was properly included in the instructions.

4. NEGLIGENCE: Evidence Showing that a Scaffold, Within Meaning of Statute, Broke and Injured Plaintiff Made a Prima-facie Case for Jury. The obvious purpose of scaffold which broke and caused the injury was for the use of employees and it being a scaffold or structure within meaning of section 6802, Revised Statutes 1919, evidence showing breaking of same and injury to plaintiff made a prima-facie case for jury.

5. INSTRUCTIONS: Omission of Necessary Element Requisite to Plaintiff's Right of Recovery from Instruction Directing a Verdict, Cannot be Cured by Instruction for Defendant. An instruction for plaintiff purporting to cover entire case and directing a verdict for him must contain every necessary element requisite to his right to recover, and the omission of a necessary element therefrom cannot be cured by an instruction given for defendant.

6. MASTER AND SERVANT: Negligence: Negligence of Fellow Servant Need not be Negatived in Instruction for Plaintiff Covering Entire Case and Directing a Verdict. Negligence of fellow workman is an affirmative defense and before it can defeat plaintiff's recovery must be specially pleaded and proved, and it was not necessary for such issue to be included in plaintiff's instruction, purporting to cover the entire case and directing a verdict, because it was not an essential element of plaintiff's right of recovery.

7. ———: An Instruction Unnecessarily Negativing Two Defenses Did not Make the Same Erroneous for Failure to Negative a Third. Where contributory negligence, assumption of risk and negligence of fellow servant were pleaded by defendant, an instruction directing a verdict for plaintiff unnecessarily negativing contributory negligence and assumption of risk did not make instruction erroneous for failure to negative negligence of fellow servant.

8. MASTER AND SERVANT: Fellow-Servant Rule: Where Negligence is Failure to Furnish Safe Appliance Fellow Servant Rule Does not Apply. Where the negligence relied on is failure of defendant to furnish a safe appliance with which to work the fellow-servant rule does not apply.

9. ———: Defenses of Contributory Negligence and Negligence of Fellow-Servant Question of Law and not of Fact. The defenses of contributory negligence and negligence of fellow servant are questions of law and not of fact.

Bennett v. O'Maley Tractor Co.

10. ————: Instructions: Whether Method of Work Used was Negligent, Question for Jury. Where the evidence showed that work could have been done by another method than one adopted, the question of whether the method used was negligent was properly for the jury, and the court did not err in refusing to give an instruction that there was no evidence defendants adopted an unsafe method.

11. TRIAL PRACTICE: Reference to Treatment of Plaintiff by Insurance Company's Doctor Will not Require Reversal in View of Action of Court and Amount of Verdict. Where plaintiff testified that he was treated by insurance company's doctor, and the answer, upon objection being made, was immediately stricken out by the court with instructions to jury to disregard it, the judgment will not be reversed where there was no claim that the verdict was excessive except an argument that the amount of verdict showed that jury should have been discharged because of the answer made by plaintiff.

Appeal from the Circuit Court of Jackson County.— *Hon. O. A. Lucas,* Judge.

AFFIRMED.

*McCanles, Kennard & Trusty* for respondent.

*Morrison, Nugent & Wylder* and *Busby, Sparrow & Patterson* for appellants.

ARNOLD, J.—This is a personal injury suit. At the time of his injury plaintiff was employed by defendants as a carpenter, or carpenter's helper. Defendants, desiring to demonstrate to retail dealers in Ford automobiles the operation of certain machinery which should be used in the repair of Ford cars in a first class shop, erected what defendants termed a model shop. This model shop consisted only of frame work of wood, not enclosed. It was eighteen feet long and sixteen feet wide and consisted of three 2x6 uprights on each side. From the floor to the joists was twelve feet. Slightly above the joists and extending lengthwise of this frame was a line shaft on which wooden pulleys were placed which by means of a belt were set in motion by the machinery placed upon the floor below. The wooden pulleys were

about four feet in diameter, were in two parts bolted together, and weighed eighty pounds each.

At the time of the injury, February 5, 1920, plaintiff had been working for defendant O'Maley as a carpenter, or carpenter's helper, for about two years. On the day the pulleys were placed on the line shaft, or the day following, plaintiff was called from some other work on which he was engaged and directed by the foreman, Guyunn to aid the carpenter, Dixon, in taking down one of the pulleys.

In order to do this there had been nailed a 2x6 stringer on the uprights on each side of the model shop, about seven feet above the floor, then placed two 2x12 planks crosswise of the shop, with their ends resting on the stringers nailed to the uprights, in the same manner as when the pulleys first were put in place. Plaintiff and Dixon got upon the planks, or both upon the same plank, and while unbolting and removing the pulley, one of the 2x6 stringers which had been nailed to the uprights, and upon which one end of the scaffold plank rested, broke and both plaintiff and Dixon were precipitated to the floor and one-half of the pulley which had been released from the bolts fell, striking plaintiff upon his right leg, ankle and foot, severely injuring him.

The second amended petition, on which the cause went to trial, charges negligence in the following particulars:

(a) In failing to have the scaffold well and safely supported, and that the same was of insufficient width and not sufficiently secured to insure the safety of persons working thereon.

(b) That the floor board of the scaffold upon which plaintiff and Dixon were standing while at work was of insuffcient strength and size to support them in safety and that this fact was known to defendants, or by the exercise of ordinary care could have been known to them.

(c) That defendants carelessly and negligently ordered plaintiff to go upon the scaffold, knowing the same to be of insufficient strength.

(d)   The adoption and use of an unsafe method by which plaintiff was required to do his work, when a safer method for doing the same was at hand.

The amended answer was, first, a general denial and, as special defenses, charged contributory negligence and assumption of risk, and that the injury was caused by negligence of a fellow servant.   The reply was a general denial.   Upon the pleadings thus made the cause went to trial to a jury.   The verdict was for plaintiff in the sum of $4500 and defendant appeals.

Defendants' first assignment of error is directed to instruction No. 1, given at the request of plaintiff, in that it tells the jury that if they find that the stringer which supported one end of the scaffold board on which plaintiff stood was insufficient in strength and size, and that by reason of such insufficiency it was reasonably likely to break and that defendants and their employee Guyunn knew, or by the exercise of ordinary care might have known that the scaffold or stringer was so insufficient in strength and size, and reasonably likely to break and fall, they should find for plaintiff.

Defendants urge that there is no testimony in the case to support the charge that defendants, or their foreman Guyunn, knew, or by the exercise of ordinary care might have known that the stringer was reasonably likely to break.

Plaintiff undertakes to meet this objection by referring to the provisions of section 6802, Revised Statutes 1919:

"All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon."

The parties hereto are agreed that if the structure in controversy is "any kind of a building" within the

meaning of the statute, the controversy on this point is determined. Webster defines the word *building* as follows: "As now generally used, a fabric or edifice, framed or constructed, designed to stand more or less permanently, and covering a space of land for use as a dwelling, storehouse, factory, shelter for beasts, or some other useful purpose." The word *structure* is given as a synonym.

In Forbes v. Dunnavant, 198 Mo. 193, 95 S. W. 934, the court in applying this statute, held that it was not intended to inure to the benefit of workingmen engaged in the erection of a scaffold, but for others who might use it after it was constructed, and where a servant was negligent in selecting timber to be used in a scaffold, thus causing an injury to a fellow servant, the master was not held liable.

The testimony shows that while the structure in question was not a building within the sense of being a dwelling, storehouse, or shelter for beasts, it is properly included within the term "other useful purpose." It is in evidence that the structure was intended to be used as a model repair shop, a structure intended for some useful purpose, and in this respect it was a building, within the meaning of the statute.

Defendants contend the statute does not apply because plaintiff aided in the construction of the scaffold. The evidence shows that the scaffold which broke and caused the injury is not the one that was constructed and used when the pulleys were put in place, though similarly constructed, and of the same kind of timbers.

The obvious purpose of the scaffold which broke and caused the injury was for the use of employees in removing one of the wooden pulleys above referred to, and we hold it was a scaffold or structure within the meaning of the statute. [Most v. Goebel Const. Co., 199 Mo. App. 336, 203 S. W. 474.]

There was testimony introduced to the effect that plaintiff had no part in the construction of the scaffold and, therefore, even in the face of evidence to the contrary, that question was one of fact for the jury's deter-

mination and was properly included in the instructions. With this holding as to the application of section 6802, it follows that the fact that the scaffold broke and plaintiff was injured made a prima-facie case for the jury, and it is unnecessary to discuss further the collateral arguments presented by counsel on this point.

For a second assignment of error defendants declare that the giving of instruction No. 1 referring to two defenses pleaded by defendants and omitting the third was error because such instruction tended to confuse the jury, did not declare the law and was inconsistent with defendants' instruction No. 14. Said instruction told the jury if they found defendants were negligent "then you will find for the plaintiff unless you find that he was guilty of contributory negligence, or assumed risk, as set forth in other instructions."

The complaint is that the instruction which purported to cover the whole case and directs a verdict failed to include defendants' plea that the injuries, if any, were caused by negligence of a fellow servant. Instruction No. 14 for defendants covered this defense and, for that reason defendants urge the two instructions are confusing to the jury in this: That in plaintiff's instruction No. 1, the jury are told that present negligence of defendant and absent contributory negligence and assumed risk on the part of plaintiff, the verdict should be for plaintiff, while instruction No. 14 for defendants introduces another element, to-wit, that the injuries, if any, were caused by negligence of a fellow servant and that this element must be found absent to entitle plaintiff to a judgment.

The general rule applicable to an instruction which purports to cover the whole case and directs a verdict is so exhaustively discussed in State ex rel. v. Ellison, et al., 272 Mo. l. c. 587, that a quotation therefrom is appropriate:

"Our rule is, that if the instruction for the plaintiff purports to cover the whole case and directs a verdict, then if it be found that such an instruction has omitted

209 M. A.—40

a necessary element requisite to the right of plaintiff to recover, then such omission is not, and cannot be cured by an instruction given for the defendant. . ."

This issue is governed by the rulings made in that case, and it remains only for us to determine whether the question of negligence of a fellow servant is "a necessary element" of plaintiff's right to recover. Negligence of a fellow workman is an affirmative defense and before it can defeat plaintiff's recovery, must be specially pleaded and proved. It is not an element of plaintiff's case and therefore need not be included in the instruction which purports to cover the entire case and directs a verdict. [Meily v. Railroad, 215 Mo. 567, l. c. 587 et seq.] Neither of the pleaded defenses referred to in the instruction was a necessary element in plaintiff's right to recover, and in so including them the instruction went farther than was necessary under the rule above quoted. The fact that another affirmative defense pleaded was not therein mentioned does not render the instruction erroneous. The question was fully covered in defendants' instruction No. 14. [Meily v. Railroad, supra; Colburn v. Krenning, 220 S. W. 934; Grote v. Hussman, 223 S. W. l. c. 132.] We fail to see in the situation in this case any deviation from the rule announced by this court in Schinogle v. Baughman, 223 S. W. 897, 900, where it is said:

"It is further said that said instruction fails to include the pleaded defense of contributory negligence. But contributory negligence was submitted to the jury in two of defendants' instructions, hence no complaint can be urged on that ground." (Citing cases.)

We rule against defendants' contention on this point. The negligence relied on by plaintiff is failure of defendants to furnish him a safe appliance with which to work, and in such case the fellow servant rule does not apply. The jury having found that defendants were negligent, under that theory of the case, the verdict would seem to have been responsive, and to have disposed of all defenses pleaded.

Bennett v. O'Maley Tractor Co.

The defendants also object that plaintiff's injuries were caused by his own negligence, or by the negligence of a fellow servant, and urge that in either case, plaintiff is precluded from recovery.

It is sufficient answer to that contention to say that these were questions of fact and not of law, and as they were properly submitted to the jury in instructions, the verdict will not be disturbed for that reason.

Another objection is that the court erred in refusing defendants' instruction No. 2, because there was no evidence in the case that defendants negligently adopted an unsafe method of removing the pulley. Their statement is argumentative and reflects defendants' idea of the value of the testimony on that point. The record shows there was testimony to the effect that another method than the one adopted might have been used, to-wit, the use of a pulley attached to the joist. This testimony being in the record, the question of whether the method used was negligent was properly left to the jury's wise determination. And while this testimony may not have been conclusive that the method used was more dangerous than the use of a pulley and, therefore, negligent, it was testimony from which the jury might reasonably infer defendants' negligence in adopting it. We therefore hold that the court did not err in refusing to give defendants' instruction No. 2, as follows:

"The court instructs the jury that there is no evidence in this case that defendants negligently adopted an unsafe method of removing the pulley from the shaft mentioned in evidence."

The fifth and last assignment of error is directed to the refusal of the court to discharge the jury because of alleged prejudice injected into the case by the line of examination conducted by plaintiff's counsel. This objection is based upon the fact of record that counsel for plaintiff, on direct examination, asked plaintiff:

"Q. What Doctor waited on you?" To which plaintiff replied, "Doctor Pittam. "Q. Was he your doctor?

A. No, sir. "Q. Who furnished him? A. The insurance company, I believe."

While this court does not desire to be understood as sanctioning the introduction in evidence of improper matter, yet we think in this instance the court cured any prejudicial effect which may have been wrought by the questions and answers, by promptly striking out the answers upon objection of defendants in which the court was asked to strike out the question and answer and to direct the jury to disregard it. After the court had sustained the objection and had stricken out the evidence and directed the jury to disregard it, defendants then asked that the jury be discharged, upon the ground that the tendency of the question and evidence was to cause a larger verdict to be rendered than otherwise might have been awarded. In this instance the objection was not made until after the answer was given. There is no claim that the verdict is excessive, and under these circumstances the judgment ought not to be reversed.

There is reference in defendants' brief to the effect that the jury awarded plaintiff the "outrageous sum of $4500 damages, notwithstanding appellant paid respondent his regular salary of $27 per week for five months after his injury, though no service was rendered during that time." This statement is made as a matter of argument that the jury should have been discharged, rather than as a direct objection for a reduction of the amount of the verdict, and the question therefore will not be discussed.

We fail to find any reversible error in the record. The judgment is affirmed.

All concur.