MATT E. JOKI, Plaintiff and Respondent, *v.* H. E. Mc-BRIDE, Defendant and Appellant.

No. 11360.

Submitted October 16, 1967. Decided December 28, 1967.

436 P.2d 78.

Anderson, Symmes, Forbes, Peete & Brown, Weymouth Symmes (argued), Billings, for appellant.

J. H. McAlear (argued), Red Lodge, Robert H. Wilson (argued), Hardin, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by defendant from a judgment entered against him in the sum of $12,375 in the district court of Carbon County based upon a jury verdict. The case is an action for personal injuries resulting from a fall from a scaffold.

Plaintiff in the action is Matt E. Joki, a workman engaged as a carpenter's helper in connection with building an additional room on a cabin located on the west fork of Rock Creek in Custer National Forest some thirteen miles from Red Lodge in Carbon county; he will hereafter be referred to as Joki.

Defendant in the action is H. E. McBride, the owner of the cabin, who will hereafter be referred to as McBride. The other person involved herein, although not a party to this suit, is Roy Linn, who was engaged by McBride as a carpenter to build the additional room on McBride's cabin, and who will hereafter be referred to as Linn.

The accident forming the basis of this suit occurred about 2:00 p. m. on July 16, 1966. Joki and Linn had been engaged in the building of the addition to McBride's cabin since some time in June, 1966. Several days prior to the accident they had constructed a scaffold on the east side of the addition when work had progressed to the point where scaffolding was required to put the rafters in place which would support the roof. This east scaffold was constructed entirely out of materials belonging to Linn. Linn placed his two scaffold jacks at the east end of the addition and on top of these a walkway was laid approximately 22 inches wide consisting of one 2 x 10 and one 2 x 12 laid side by side and extending generally across the east side of the addition.

A day or two prior to the accident, work had progressed to the point where scaffolding was required to provide access to the roof being constructed. This second scaffold was constructed by Linn and Joki out of materials supplied by McBride for general construction purposes. This scaffold was constructed on the north side of the addition being built in the following manner: Two stringers were set up perpendicular to the ground at each end of the addition on the north side and a cross piece was nailed to each stringer and attached to the outside wall. The stringers were cross-braced by two 1 x 10s extending from the base of each stringer at the ground diagonally upward and across to the opposite stringer. A walkway consisting of two 1 x 12s, one on top of the other and two 1 x 10s, one on top of the other was placed on top of the cross pieces and thus a walkway was formed 22 inches wide and 2 inches thick extending generally across the north side of the

addition. The upright stringers extended some distance upward from the base of the walkway.

Because the walkways on both the north scaffold and the east scaffold were not longer than the north and east sides of the addition respectively, there was a 90 degree gap between the two walkways at the northeast corner of the addition. Additionally the walkway on the north scaffold was 8 to 10 inches higher than the walkway on the east scaffold. A peeled log serving as a rafter and running from the ridgepole downward to form the end of the eave had not been nailed in place and jutted out about one foot in the general area of the northeast corner of the addition.

Access to the ground from the east scaffold was provided by climbing down the scaffold jacks at either end by means of rungs constructed of one inch lumber nailed across the scaffold jacks at convenient intervals. To get to the ground from the north scaffold it was necessary to climb down through a hole which had been cut in the wall for a window.

It is to be noted that McBride, the owner of the cabin, played no part in the construction of either scaffold.

Immediately prior to the accident Joki had been working on the north scaffold filling in the space between the rafters to bring them up level with the sheeting. He found it necessary to go down to the ground for another piece of material, walked eastward along the walkway of the north scaffold, stepped across the protruding peeled log serving as a rafter near the northeast corner of the addition and onto the walkway of the east scaffold some 8 to 10 inches below, somehow lost his balance, grabbed the rafter which had not been nailed into position which gave way, and fell to the ground sustaining injuries to his back and shoulders. It is unclear from the testimony just what caused Joki to lose his balance. There are conflicts in the evidence as to just how far along the walkway on the north scaffold he had progressed when he fell, but it is undisputed that he was entirely on the walkway of the east scaffold

when he lost his balance. It is likewise undisputed that no part of either scaffold broke, gave way, or collapsed.

Joki's claim in this case is bottomed on his contention that McBride, the owner of the cabin and the one for whom the addition was being built, violated the Montana Scaffold Act. Joki contends that he was required to work on a scaffold that was unsafe in that (1) there was a 90 degree gap.between the two scaffolds at the northeast corner of the addition being constructed, and (2) that the walkway on the north scaffold was 8 to 10 inches higher than the walkway on the east scaffold. Joki contends that because of these violations of the Scaffold Act he lost his balance in going from one to the other, fell to the ground, and suffered the injuries of which he complains.

McBride, on the other hand, denies any violation of the Scaffold Act, contends that Joki was not an employee of his but of Linn, an independent contractor, and additionally claimed contributory negligence and assumption of risk on Joki's part. The defenses of contributory negligence and assumption of risk were stricken by the trial judge on motion of Joki's attorney at the opening of the trial, apparently on the basis that these defenses are unavailable in a Scaffold Act case.

Trial was had before a jury on this basis and at the conclusion of plaintiff's case in chief defendant made several motions in the alternative: (1) to dismiss the complaint on the grounds of failure of proof in that there was no showing of any defect in the scaffolding proximately causing the accident; (2) to dismiss the complaint on the ground that McBride even under the Scaffold Act owed no duty to Joki which was breached; (3) to dismiss the complaint on the ground that if there was any breach of duty under the Scaffold Act, it was the breach of Linn and not McBride; (4) for a directed verdict on the grounds stated in (1) above; and (5) a motion to reinstate the defenses of contributory negligence and assumption of risk. All motions were denied.

Upon settlement of jury instructions, the court gave the fol-

lowing instruction proposed by plaintiff and objected to by defendant, as Court's Instruction No. 6:

"It is admitted that the defendant, H. E. McBride, was the owner of the building under construction, and that the plaintiff, Matt E. Joki, was employed to work thereon. If you find that the plaintiff fell from a scaffold while engaged in his employment and was injured thereby then you are further instructed that insofar as scaffolds are concerned, the laws of the State provide that all scaffolds erected in the State for use in the erection, repair, alteration or removal of buildings shall be well and safely supported, and sufficient width, and properly secured, so as to insure the safety of persons working thereon and passing thereunder, or by the same, and to prevent the falling thereof, or of any material that may be used, placed, or deposited thereon.

"Under the statute then relating to scaffolds, it was the duty of the defendant, McBride, to provide, or to have provided, scaffolding in the construction of his building in compliance with the statute as to insure the safety of the plaintiff in working thereon. This was an absolute duty and one which McBride could not delegate to others.

"If you find then that the scaffold provided for plaintiff's use did not comply with the requirements of the statute, then your verdict must be for plaintiff, but only if the additional element exists that the defective scaffold was the proximate cause of plaintiff's falling therefrom and his injuries sustained, if any, resulting from the fall.

"It is your province to determine the matter of proximate causation. However, you may not consider whether or not the plaintiff was contributorily negligent, or whether or not he assumed the risks of his employment, or was injured by the negligence of a fellow worker."

The jury returned a verdict for Joki against McBride. McBride's appeal followed from the judgment entered on that verdict.

The basic issues presented for review can be summarized in this manner: (1) Does the decision of this court in Pollard v. Todd, 148 Mont. 171, 418 P.2d 869, impose liability on McBride under the facts of the instant case? (2) Was error committed by the district court in giving its instruction No. 6? and (3) Did the district court err in striking the defenses of contributory negligence and assumption of risk at the beginning of the trial? A secondary issue included in the first issue set forth above is whether or not the defendant's motion for dismissal and directed verdict made at the conclusion of plaintiff's case in chief should have been granted.

All these issues set forth above which are to be reviewed upon this appeal are interrelated and can be answered by determination of the proper construction of the Montana Scaffold Act (section 69-1401, et seq., R.C.M.1947), including the construction placed upon this Act by the decision of this court in Pollard v. Todd, 148 Mont. 171, 418 P.2d 869.

The Scaffold Act provides in part as follows:

"All scaffolds erected * * * for use in the erection, repair, alteration * * * of buildings shall be well and safely supported, and sufficient width, and properly secured, so as to insure the safety of persons working thereon. * * *" Section 69-1401, R.C.M.1947.

The leading and only case in Montana involving the Scaffold Act is the decision of this court in Pollard v. Todd, supra. Pollard affirmed a verdict in favor of a carpenter's helper, who, while working on a scaffold nailing strips of tin around a door on a building being constructed, fell 12 feet to the ground when the plank on which he was standing suddenly broke without warning. The basis of liability in Pollard was violation of the Scaffold Act constituting negligence per se proximately causing the injuries to the workman. Mr. Justice Castles, speaking for a unanimous court, construed the Scaffold Act in this language found at page 179 of 148 Mont., at page 873 of 418 P.2d.

"We hold that the purpose of section 69-1401 is to supplement the protection of the common law by providing criminal sanctions and imposing an absolute statutory duty upon the owners of real estate to protect workmen and others from the extraordinary hazards associated with scaffolds. The mandatory nature of the statute forecloses the common-law defenses of assumption of the risk, contributory negligence, and negligence of a fellow servant. We have not decided that liability becomes fixed upon the showing of a scaffold-associated injury. A defendant may escape liability upon proof that there was no violation of statute or that the violation was not the proximate cause of the injury. While we recognize that there has been confusion over the effect of the 'Scaffold Act' on common-law defenses and over the meaning of certain words in the various acts, there is general support for our construction of this act. [Citing cases.]"

We have no quarrel with this construction of the Scaffold Act.

However, in the instant case, unlike the Pollard case, there is no evidence whatever that either scaffold was not "well and safely supported and sufficient width, and properly secured" as required by the Act. Each scaffold was structurally sound; neither scaffold broke, collapsed, swayed or gave way; both were safe for the purpose for which they were built—to provide a platform where a man could work on the roof.

It was only when Joki used the scaffolds for a purpose for which they were not intended that he was injured. The following testimony of Linn, a witness for Joki, was given on direct examination by Joki's attorney:

"Q. Now going back here briefly to the scaffolding Mr. Linn, could you tell us again what the purpose of the scaffolding was? A. It was to build it up so we could work on the roof up there, for putting in the rafters and putting on the sheeting and the roofing.

"Q. And was it built with the intention of working from one scaffolding to the other? A. No.

"Q. Back and forth and with the roof? A. No."

The length of the platforms or walkways, their height in relation to each other, and the fact that they were built at different times to facilitate different phases of the work furnish additional evidence that neither scaffold was erected to provide access to the other.

Thus, the instant case, unlike the Pollard case, presents the situation where there is a structurally sound scaffold safe for the purpose for which it was erected. The scaffold only became unsafe when used by Joki for a purpose for which it was not built. It is patently evident that any scaffold, no matter how well constructed or how structurally sound it may be, may be rendered unsafe if used for purposes foreign to those for which it was constructed. Illustrations of this may be found in situations where a workman jumps off a roof onto the platform or walkway of a scaffold several feet below, being used to nail siding on a building, loses his balance and falls to the ground; or where a workman uses the platform of a scaffold as a base on which to saw lumber and accidentally saws into or through the platform causing it to break.

We hold that the Scaffold Act requires a scaffold to be structurally sound in relation to the purpose for which it is erected. The scaffolding in the instant case meets this requirement. Thus there is no violation of the Scaffold Act, or of any duty required by anyone therein.

The instant case is an example of a scaffold-associated injury without any violation of the Scaffold Act, and consequently no liability.

This type of situation was pointed out in Pollard v. Todd, supra, in the following language appearing at page 179 of 148 Mont., at page 873 of 418 P.2d.

"We have not decided that liability becomes fixed upon the showing of a scaffold-associated injury. A defendant

may escape liability upon proof that there was no violation of statute * * *." To hold otherwise would require every home owner in the State of Montana to be an insurer of the safe use of any scaffold used by a workman in painting the owner's house, repairing the roof, or constructing an additional room. Surely the Legislature did not intend to impose such a burden on home owners who hire workmen for repair and maintenance work around the house.

Accordingly defendant's motion for dismissal and for a directed verdict on the grounds of failure of proof should have been granted.

The judgment of the district court is reversed and the case dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, ADAIR and JOHN C. HARRISON concur.