ROBERT WILLIAM HOULT, Plaintiff-Appellant, *v.* KUHNE-SIMMONS CO., INC., Defendant and Third-Party-Plaintiff-Appellee.—(MISSISSIPPI VALLEY STRUCTURAL STEEL CO. *et al.*, Third-Party-Defendants.)

Fourth District   No. 14785

Opinion filed October 6, 1978.

Gaston & Goldstein, of Urbana (William R. Gaston, of counsel), for appellant.

McConnell, Kennedy, Quinn & Morris, of Peoria (Charles D. Knell, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Scaffolding case.

Can 25- to 30-foot-long steel I-beams and columns leaning up against a concrete wall at a 45° angle be equated to a "scaffold"?

Possibly.

Summary judgment for defendant reversed.

Mr. Hoult brought an action under the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*) alleging that he had been injured by means of a faulty "scaffold" that had been provided by Kuhne-Simmons Co., Inc., the general contractor for the construction of certain facilities at Parkland College, and that in the course of his work as an employee of a subcontractor on the job had fallen from the "scaffold" that had been provided by Kuhne-Simmons. Following extensive procedural activity (and certain third-party complaints that do not concern us in this appeal), a summary judgment was granted by the court in favor of defendant Kuhne-Simmons, finding that the steel columns from which plaintiff allegedly fell were *not* covered within the ambit of the Structural Work Act, nor the legislative definition of "scaffold" contained therein.

Parenthetically, we regret that the trial court neglected to state the reasons for his holding. They would have been helpful on review. As we—and other courts—have noted upon prior occasions, trial courts

should enumerate the reasoning that underlies their decisions. Everyone is entitled to know *why* a court does what it does—the litigants, the attorneys, the public at large, reviewing courts, and legal history in general.

Now to the merits.

The factual details necessary for an understanding of this appeal, as well as the disposition, are garnered from the discovery depositions and affidavits presented to the trial court in support of the summary judgment motions. They may be fairly summarized as follows:

ROBERT HOULT (plaintiff): On the date of the occurrence, he was employed as an iron worker setting iron columns into place. The columns were of varied lengths, some measuring 25 to 30 feet long. Columns were leaning up against a concrete wall, which was part of the foundation, at an angle of approximately 45 degrees. The wall was about 12 feet high from the ground level and on the side opposite to where the columns were lying against it, the wall had a ditch running along the bottom, approximately 4 feet deep. The plaintiff had assisted or participated in the unloading of the columns some 3 or 4 days prior to the occurrence and stated that he might have participated in the stacking or leaning of the columns against the wall. When the columns were leaned against the wall, those portions which protruded over the edge of the wall measured some 3 or 4 feet in length. Plaintiff worked with a crane in setting the columns and his job was to attach a "choker cable" near the top of the column so that the crane could lift it into place. Plaintiff's fall occurred when he walked up one of the columns in order to attach the choker cable. He was 5 or 6 feet from the top of the column and was attaching the choker cable when the column twisted sideways, throwing him off the column and into the ditch. He landed on his feet, climbed out of the ditch, and continued working that day. He stated that he had no idea what caused the column to twist other than the angle at which it was leaning. Hoult said that he had never before seen iron stacked at an angle up against a concrete wall. He further said that it would have been possible by using a ladder or some other device to have gotten onto the wall and hook the choker cable onto the column from that position. He also stated that he could have worked from the ladder directly. Although there were no ladders at the scene of the incident, "there could have been" some in the area. He said there was no other way to hook the choker cable to the column other than to climb the column. Hoult deposed that there was no scaffolding along the wall although there was other scaffolding on another part of the job. He further stated that other workers had also climbed on the columns in order to attach choker cables to them. (He said that he had some pain and soreness from the fall on the day of the fall and that the next day he could hardly walk.)

PHIL BEACHY (plaintiff's foreman): There were two foundation walls at the site, one 12 feet high and one 5 feet high. The top of the 5-foot wall was level with the surrounding ground since it was to be used as a foundation-basement wall. The I-beams and columns were stacked against both of these walls. Plaintiff Hoult had told Beachy that he (plaintiff) had fallen from a column supported in part by the 5-foot wall and in part by the ground. The column was lying in a horizontal position and Beachy did not remember any I-beams or columns lying at a 45-degree angle against the 12-foot wall.

BERNIE CONLEY, JR. (construction superintendent): The construction area had concrete walls some 3 feet tall, others 12 feet tall. These walls were 12 inches in width and usually the workmen involved in hooking the steel would work from up on the wall. Conley did not recall seeing any workers crawl up the beams or columns to hook rigging to them. The subject columns were as long as 20 feet and 65 feet and some were laid on an angle against the concrete walls. Conley deposed that there were ladders at the construction site but that he did not know whether they were being used by the iron workers involved in hooking the columns.

The sole issue in this appeal is whether the trial court properly ruled that the steel column from which plaintiff fell was *not* a "scaffold, stay, support or other mechanical contrivance" within the meaning of the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*).

Section 1 of that Act provides:

> "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, * * * for the use in the erection, repairing, alteration, removal or painting of any house, building, * * *, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, * * *." Ill. Rev. Stat. 1973, ch. 48, par. 60.

■■ The supreme court has ruled that the Structural Work Act should be given a liberal construction to effectuate its purpose of protecting persons engaged in extra-hazardous occupations of working in and about construction. (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573.) Thus, the roof of a building (*Miller v. De-Witt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630; *St. John v. R. R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271, 296 N.E.2d 740), subflooring of an apartment house (*Juliano v. Oravec* (1973), 53 Ill. 2d 566, 293 N.E.2d 897), a plank laid across a concrete form (*Frick v. O'Hare-Chicago Corp.* (1966), 70 Ill. App. 2d 303, 217 N.E.2d 552), and a steel column (*Spiezio v.*

*Commonwealth Edison Co.* (1968), 91 Ill. App. 2d 392, 235 N.E.2d 323) have all been ruled to be scaffolds under the facts of those cases. It is of no concern that the device contended to constitute a "scaffold" constituted a permanent part of the structure being erected. *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724; *Juliano; St. John.*

Defendant relies strongly on *Swendsen v. Brighton Building & Maintenance Co.* (1976), 41 Ill. App. 3d 930, 355 N.E.2d 164, in support of its judgment below. There, the defendants were engaged in the construction of a bridge over the Illinois River during which pilings were driven into the riverbed in such a manner as to form the walls for the work area where piers for the bridge were to be located. Pertinent facts concerning the incident causing Swendsen's injury were detailed by the court:

> "Plaintiff was employed by a subcontractor and, at the time of his accident, was engaged in stacking the pilings on shore after they had been pulled out of the river. A crane was used to lift each piling from a barge to the shore. A spreader attached to the crane had two cables, each with a hook to be fastened to one end of a piling. After guiding a piling into place on top of the stack, plaintiff unhooked one end, and then, in order to reach the other end, he walked along the piling. Either the piling moved, or his foot slipped on some wet mud, causing him to fall eight or ten feet into a draining ditch where he landed on a tire rim." 41 Ill. App. 3d 930, 931, 355 N.E.2d 164, 165.

Swendsen maintained that the piling on which he slipped was a "stay" or "support" within the meaning of the Act. The court disagreed, however, noting that the plaintiff had admitted in his deposition that he had walked on the piling so as not to have to walk down a hill and around other scattered pilings and therefore plaintiff had failed to establish that he had no alternative except to walk on the piling in question. 41 Ill. App. 3d 930, 933, 355 N.E.2d 164, 166.

We have no such admission in the case at bench. And *Swendsen* is therefore to be distinguished. Defendant's deposition here specifically places the availability of ladders, or any other alternative method at the job site, in clear doubt. In fact, the thrust of his evidence—in context—is to say: There were no ladders provided and since the I-beams or columns were leaning on the wall, I was forced to walk up them to attach the choker. The piling in *Swendsen* was not provided as a place to *work* in lieu of a scaffold, but rather was chosen as a place to *walk* in lieu of a longer route. Yet here, it is at least arguable that the record establishes that the steel beam or column was furnished as a place to *work* because there was no alternative method of performing the assigned task.

■ Under such circumstances as we are here confronted with, we are

of the opinion that the leaning columns—absent ladders or other contrivances provided for the job—can constitute a "scaffold," "support," or "other mechanical contrivance" "erected" "for the use in the erection" of a "building." And thus fall within the perimeters of the Structural Work Act.

Furthermore, there are two material issues of fact which are in question: (a) Hoult doesn't think there were any ladders on the project, while the construction superintendent said there were; and (b) Hoult said he fell from a column leaning against the concrete wall at an angle, while the foreman said the column in question was "lying in a horizontal position." These are crucial and visceral facts in this litigation, going to the very core of the case. It is the settled law in Illinois that when a bona fide issue of fact exists, summary judgment should be denied. *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.

Like the plaintiff in *Swendsen,* Mr. Hoult may have taken the short trail and quickest route to perform his job (*i.e.,* up the slanted column itself), rather than the longer, more time consuming (yet safer) path. But that is indeed the capstone issue here and its determination must be reserved for the trier of fact. The granting of the summary judgment motion was improvident and the cause must be reversed and remanded to the trial court.

■■ As a parting shot, defendant argues that plaintiff has not demonstrated that defendant violated the Act *wilfully,* citing *Swendsen,* where the court indicated that a violation under the Act must be shown to have been wilfully done, as the legislative enactment indeed requires. (Ill. Rev. Stat. 1973, ch. 48, par. 69.) This question of wilfulness, however, was not first presented to the trial court, was not set forth as a ground in the motion for summary judgment that is before us, and arises for the first time on appeal.

The matter is not viable.

Reversed and remanded.

CRAVEN and TRAPP, JJ., concur.