No. 82-98

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

JOHANN J. MYDLARZ,

Plaintiff and Appellant,

-vs-

PALMER/DUNCAN CONSTRUCTION COMPANY
AND RICE MOTORS,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Presiding

COUNSEL OF RECORD:

For Appellant:

Jardine, Stephenson, Blewett & Weaver; Curtis G.
Thompson and Alexander Blewett III argued,
Great Falls, Montana

For Respondents:

Smith, Baillie & Walsh; Dennis Clarke and William
Baillie argued for Respondents Palmer/Duncan, Great
Falls, Montana
Cure & Borer; Edward W. Borer argued for Respondent
Rice Motors, Great Falls, Montana

Submitted:   January 10, 1984

Decided:   April 30, 1984

Filed: APR 30 1984

*Ethel M. Harrison*
_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Johann J. Mydlarz appeals a Cascade County District Court judgment, based upon the jury's special verdict, in favor of Palmer/Duncan Construction (respondent) and Rice Motors (respondent) in an action to recover damages for injuries he received in a fall from a ladder at the construction site of a new Rice Motors building. We reverse and remand for a new trial.

Rice Motors, an automobile dealership, let bids and awarded contracts for building a new sales facility in Great Falls, Montana. Rice awarded a substantial portion of the contract to Palmer/Duncan. It awarded electrical, mechanical, plumbing and installation of the sprinkler system to several other contractors. Palmer/Duncan, as the general contractor, subcontracted the painting to Don Bidwell, Mydlarz's employer.

Pursuant to specific instructions from Rice, Bidwell's employees covered the overhead sprinkler nozzles prior to painting the ceiling. They used scaffolding owned by the electrical subcontractor when they covered the nozzles and painted the ceiling. It is important to note that Rice contracted independently to have the sprinkler system installed. It was not part of the Rice-Palmer/Duncan contract and, thus, not part of the Palmer/Duncan-Bidwell subcontract. The painting of the sprinkler pipes was independent of the installation contract.

Palmer/Duncan allowed use of its scaffolding during construction of the building but removed all of its scaffolding before July 29, 1977. On August 3, 1977, Palmer/Duncan

2

received a certificate of substantial completion and none of its employees were at the site after that date.

After the painting was completed, Bidwell apparently ordered an employee, Ron Lins, to remove the coverings from the sprinkler nozzles. Lins arrived at Rice Motors on July 29, 1977, and found no scaffolding was available. He used a ladder that was present at the work site to remove the nozzle covers. The ladder was leaned against the sprinkler pipes and slipped when Lins was on it. He fell and sustained injuries.

On August 1, 1977, Mydlarz was ordered by Bidwell to complete the removal of the nozzle covers. The scaffolding owned by the electrical subcontractor was in use; the scaffolding owned by Palmer/Duncan had been removed. Bidwell directed Mydlarz to use a ladder to remove the covers.

Mydlarz removed several nozzle covers near the horizontal east-west sprinkler pipe before removing the fifth or sixth covering at a narrower point in the pipe. While removing the covering, Mydlarz fell from the sixteen-foot ladder. As a result of this fall he sustained serious knee and elbow injuries and was unable to work.

The sprinkler pipes moved under pressure from the ladder. They had a lateral movement of five inches and a vertical movement of two inches before resting against concrete beams.

Mydlarz was given specific instructions by Bidwell how to place the ladder, i.e., if the ladder was placed several inches above the pipe, the lateral-vertical movement of the pipe would not cause the ladder to fall. Before Mydlarz fell, Peter Rice of Rice Motors attempted to contact Bidwell or Palmer to request scaffolding for Mydlarz but was unable

3

to reach them in time. After the accident, Bidwell removed the nozzle covers with the use of a ladder. Peter Rice testified he climbed the same ladder at the point where Mydlarz fell with no difficulty. Evidence was presented showing Mydlarz had placed the ladder only one inch above the pipe.

Under the Rice-Palmer/Duncan contract, Palmer/Duncan was responsible for scaffolding:

> "Temporary Scaffolds, Staging and Safety Devices.
>
> "Provide, erect, maintain all scaffolding staging, platforms, temporary flooring, guards, railings, stairs, etc., as required by local and state codes or laws, for the protection of workmen and the public. The construction, inspection and maintenance of the above items shall comply with all safety codes and regulations as applicable to the project."

The contract further provided that Palmer/Duncan would be responsible for the safety of all workmen:

> "PROTECTION OF PERSONS AND PROPERTY
>
> "10.1 SAFETY PRECAUTIONS AND PROGRAMS 10.1.1. The contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the work."

In addition, this contract provided that Palmer/Duncan would be specifically responsible for the safety of all workmen and property on the project:

> "The contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:
>
> ".1 All employees on the work and all other persons who may be affected thereby;
>
> ".2 All the work materials and equipment to be incorporated therein, whether in storage on or off the site, under the care, custody or control of the contrac-

4

tor or any of his subcontractors or sub-subcontractors; and

".3 Other property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation, or replacement in the course of construction."

Under the contract Palmer/Duncan was to protect work and materials by suitable covering while painting was in progress. Rice retained the right to perform cleanup work.

Before trial Mydlarz filed two motions _in_ _limine_ to prevent respondents from introducing evidence of workers' compensation benefits he received from the accident and a prior fall. This evidence was admitted, but the trial court instructed the jury not to use the evidence of workers' compensation benefits to reduce any damages awarded Mydlarz. The court allowed the jury to consider evidence of Mydlarz's drinking problem.

Mydlarz attempted to introduce evidence that would show grounds for the workers' compensation benefits and that he would have to pay the state fund its subrogation interest from any recovery in the lawsuit. This evidence was excluded.

By special verdict, the jury found that neither Palmer/Duncan nor Rice had breached a duty to provide scaffolding to Mydlarz, thus finding that the Scaffolding Act had no application. The jury also found that neither respondent was negligent in failing to provide a safe place to work or safe equipment to Mydlarz. Finally, the jury found that Mydlarz was 100 percent contributorily negligent and such negligence was the proximate cause of his injuries. Based upon the special verdict, judgment was entered against

5

Mydlarz from which he appeals. He asserts numerous issues for review:

1. Does the Montana Scaffolding Act apply to the facts of this case?

2. Did the District Court err by allowing evidence of Mydlarz's receipt of workers' compensation benefits?

3. Did the District Court err by refusing to allow evidence explaining receipt of such benefits?

4. Did the District Court err by allowing evidence of Mydlarz's alleged drinking problem?

5. Did the District Court err by admitting evidence of a prior fall taken by Mydlarz on another project?

6. Did the District Court err by excluding the opinion testimony of Mydlarz's fellow employee who had a similar accident?

7. Did the District Court err by excluding evidence of Palmer/Duncan's offer to repay an outstanding debt to a witness prior to giving his testimony?

8. Did the District Court err by striking Mydlarz's claim for punitive damages?

9. Was it error to fail to instruct the jury that following the directions of an employer is not contributory negligence?

10. Was Palmer/Duncan Construction Company negligent as a matter of law for removing scaffolding before completion of the project?

11. Were instructions on OSHA violations improperly refused?

12. Did the District Court err in allowing certain costs and disbursements?

Respondent Palmer/Duncan has raised two issues not addressed by appellant. We will not consider such issues because Palmer/Duncan has not complied with Montana Rules of Appellate Civil Procedure; specifically, Palmer/Duncan has not perfected a cross-appeal. Although Rule 14, M.R.App.Civ.P., provides for review of matters by cross-assignment of errors, this does not eliminate the necessity for cross-appeal by a respondent who seeks review of matters separate and distinct from those sought to be reviewed by appellant. Johnson v. Tindall (Mont. 1981), 635 P.2d 266, 268, 38 St.Rep. 1763; Francisco v. Francisco (1948), 120 Mont. 468, 470, 191 P.2d 317, 319.

We will first consider the applicability of Montana's Scaffolding Act. Mydlarz argues that the obligation to provide for the safety of all workers on a construction project mandates application of the Scaffolding Act. Liability falls on the entity who assumed that obligation, according to Mydlarz.

Furthermore, Mydlarz asserts that the term "scaffolding" must include any device utilized to allow work in high places. The Act must be construed in light of evils it is intended to prevent. Since the Act was intended to increase safety in ultrahazardous work (i.e., work in high places from which a fall could cause death or injury), "scaffolding" should be any device that would protect a worker from that peril.

Mydlarz alternatively argues that where the contractor or owner agrees to provide scaffolding and fails to do so, such failure constitutes a violation of the Scaffolding Act.

Respondent Palmer/Duncan contends that it had not assumed full control of the project as Rice Motors

7

independently subcontracted with other entities for particular portions of the work. Second, absent some form of control over the subcontractor's method of operation, the general contractor is not liable for injuries to subcontractors' employees. Third, the Act only applies to those who have direct control of construction of a building with <u>more than three floors</u>. Here, the building had only one floor. Finally, the Act applies to scaffolding. This term must be construed according to its ordinary meaning. The appellant was using a ladder so the Act should not apply.

Respondent Rice Motors asserts that the Act applies to scaffolding and the appellant was using a ladder. Thus, the Act should not apply. Further, the Illinois cases cited by appellant were decided under the Structural Work Act which includes "all mechanical contrivances" instead of scaffolding specifically, as in the Montana Scaffolding Act. Finally, the Act does not impose a duty to provide scaffolding, only a safe place to work. If that includes scaffolding, then the Act applies. In the case at bar, a safe place to work was provided; scaffolding was not needed for appellant to perform his duties.

I

Applicability of the Scaffolding Act to the case at bar depends upon proper interpretation of the term "scaffolding" within the Act. The essence of the Act is codified in section 50-77-101, MCA:

> "<u>Construction of scaffolds</u>. All scaffolds erected in this state for use in the erection, repair, alteration, or removal of buildings shall be well and safely supported, of sufficient width, and properly secured so as to ensure the safety of persons working on them or

> passing under them or by them and to
> prevent them from falling or to prevent
> any material that may be used, placed, or
> deposited on them from falling."

This Court has stated that the purpose of the Act is to "supplement the protection of the common law by providing criminal sanctions and imposing an absolute statutory duty upon the owners of real estate to protect workmen and others from the extraordinary hazards associated with scaffolds." Pollard v. Todd (1966), 148 Mont. 171, 179, 418 P.2d 869, 873.

A particular term in a statute must be construed according to the context and the approved usage of the language, but technical terms are to be construed according to their peculiar and appropriate meaning. Section 1-2-106, MCA. When construing a statute as a whole, the intent of the legislature should be pursued. Section 1-2-102, MCA. When read together, these two statutes require that determination of the meaning of a phrase or word be made according to the purpose of the statute. Gannon v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co. (1961), 22 Ill.2d 305, 175 N.E.2d 785.

Therefore, we must construe the term "scaffolding" in light of the purpose of the Act which is to protect workmen and others from the extraordinary hazards associated with scaffolds. Pollard, supra. These hazards include scaffolding work performed in high places where a fall could cause death or injury. Hence, liberal construction of the term is required to establish that scaffolding is any device which would reduce or eliminate the hazard the Act was designed to avoid. Quinn v. L.B.C., Inc. (1981), 94 Ill.App.3d 660, 418 N.E.2d 1011; Rocha v. State (1974), 45 A.D.2d 633, 360

N.Y.S.2d 484; Bohnhoff v. Fischer (1914), 210 N.Y. 172, 104 N.E. 130.

Webster's New Twentieth Century Dictionary defines "scaffolding" as "a frame or structure for support in an elevated place . . ." 2nd Ed. at 1614 (1979). Addressing what constitutes scaffolding, American Jurisprudence 2d states:

> ". . . courts have seldom permitted an employer to disclaim liability for his servant's injury when the accident occurred in connection with the use of any structure intended to provide footing or support above the ground or floor. On the other hand, when the injury is the result of the use by the workman, for purposes of personal support, of a device which has not been constructed with the intention that it should be so used, the courts have been reluctant to hold that such devices are scaffolds. . . ." 53 Am.Jur.2d Master and Servant, § 207 at 262. (Emphasis added.)

An appellate court in Illinois has found that a temporary apparatus intended to provide footing above the ground floor for workmen is a scaffold and within the purview of its Scaffolding Act. Spiezio v. Commonwealth Edison Co. (1968), 91 Ill.App.2d 392, 235 N.E.2d 323; Frick v. O'Hare-Chicago Corp. (1966), 70 Ill.App.2d 303, 217 N.E.2d 552. The Illinois Scaffolding Act includes the phrase "all mechanical contrivances" rather than "scaffolding" in Montana's Act. However, the purposes of the two acts are identical.

In Rocha v. State, supra, the New York Supreme Court, Appellate Division, recognized that a scaffold is a temporary elevated working platform and its supporting structure, designed to support a workman in his work. Caddy v. Interborough Rapid Transit Co. (1909), 195 N.Y. 415, 88 N.E. 747.

Other jurisdictions have recognized that an apparatus not technically scaffolding is contemplated by that state's scaffolding act: Hoult v. Kunhe-Simmons Co., Inc. (1978), 64 Ill.App.3d 476, 381 N.E.2d 403 (steel columns from which employee was working may be considered "scaffolding" under structural work act); Evans v. NAB Construction Corp. (1981), 80 A.D.2d 841, 436 N.Y.S.2d 774 (plank resting on structural steel and four-by-fours considered "scaffold" under state scaffolding act); Carpenter v. Burmeister (1925), 217 Mo.App. 104, 273 S.W. 418 (sheathing boards temporarily laid on floor joists inside building was scaffolding according to scaffolding act); Most v. Goebel Const. Co. (1918), 199 Mo.App. 336, 203 S.W. 474 (platform supported by chains swinging from roof, the other end supported by poles running along side of buildings, is scaffold); Steel and Masonry Contracting Co. v. Reilly (2nd Cir. 1913), 210 F. 437 (plank laid loosely across permanent steel roof trusses having a slope of about one and one-half inches to the foot, is considered scaffolding under labor law of New York). See also, Spiezio, supra; Frick, supra; Ross v. Delaware L. and W.R. Co. (1921), 231 N.Y. 335, 132 N.E. 108.

We adopt the analysis of the appellate court in Illinois that focuses on the nature of the device in question. In Quinn v. L.B.C., Inc. (1981), 94 Ill.App.3d 660, 418 N.E.2d 1011, the court said:

> "Undisputedly, a part of a permanent structure may itself constitute a 'scaffold' within the contemplation of the Act (Louis v. Barenfanger (1968), 39 Ill.2d 445, 236 N.E.2d 724; Halberstadt v. Harris Trust & Savings Bank (1972), 7 Ill.App.3d 991, 289 N.E.2d 90.) In making this determination, our inquiry is not limited to the identity of the object claimed to be a support or scaffold, but rather how it was being utilized at the

time of the injury. (Kenworthy v. Young (1979), 70 Ill.App.3d 144, 26 Ill.Dec. 593, 388 N.E.2d 217). . . ." 418 N.E.2d at 1014. (Emphasis added.)

According to the authority discussed above, particularly the statutory construction mandated by the purpose of the Scaffolding Act, we find the term "scaffolding" includes not only a unique device constructed by steel tubing, planks or plywood, and nuts and bolts, but additionally any device utilized by workmen to allow them to work where a fall might result in serious injury. This would accomplish the purpose of the act stated in Pollard, supra. Following the Quinn analysis, we need not determine applicability of the Act exclusively by the identity of the device used but how such device was being utilized at the time of the injury. Mydlarz was using the ladder and the flexible sprinkler pipe as a substitute for regular scaffolding which was unavailable. This combination was used as a device to raise him approximately sixteen feet to the ceiling of the building to remove sprinkler head coverings. This height is sufficient to cause serious injury as evidenced by Mydlarz's injuries due to the fall.

It is important to note that in Pollard, supra, this Court found the Scaffolding Act applied even though the injury occurred from a ladder jack device, which is not scaffolding per se. Further, Pollard cited with approval Hall v. Paul Bunyan Lumber Co. (1960), 177 Cal.App.2d 761, 2 Cal.Rptr. 519, where the California Appeals Court, an intermediate court, applied the scaffolding act to a case where an employee of a subcontractor was injured in a fall from a platform that was built on a pallet and attached to a

12

"hyster." The platform was specifically built to raise materials and equipment, not workers.

Respondent Palmer/Duncan contends that section 50-77-102, MCA, limits the Act's applicability to the construction of a building with more than three floors. This statute requires temporary flooring in buildings under construction. It does not address the construction of scaffolding and therefore does not affect the application of section 50-77-101, MCA.

Thus the Scaffolding Act is applicable where Mydlarz used the ladder-pipe device as a substitute for scaffolding. There is an additional basis for holding that the Act applies to these facts. Arguably both defendants were acting as general contractors in control of the work area and had a nondelegable duty to furnish workers a safe place to work. Clearly in the present case there was a failure to provide adequate scaffolding. Without reaching the question of which party was immediately responsible for this failure, we do hold the failure invokes the Act's applicability. The breach of contractual obligations to provide scaffolding invokes the Scaffolding Act to the same extent that providing deficient scaffolding would. See Louis v. Barenfanger (1968), 39 Ill.2d 445, 236 N.E.2d 724.

Finding the Act applies, we reverse and remand to the District Court to determine proximate cause and liability under rules set forth in State ex rel. Great Falls Nat'l Bank v. District Court (1969), 154 Mont. 336, 463 P.2d 326. Upon remand certain questions must be left to the province of the jury. Liability does not become fixed upon the showing of a scaffolding-associated injury. A directed verdict is inappropriate to decide if the Scaffolding Act was violated--that

13

is, did the ladder-pipe device fail? A directed verdict is also inappropriate to determine whether the violation was the proximate cause of the injury. Pollard v. Todd, 148 Mont. at 180, 418 P.2d at 873; Joki v. McBride (1967), 150 Mont. 378, 386, 436 P.2d 78, 82.

## II

We next consider Mydlarz's evidentiary challenges. He contends that the District Court committed prejudicial error by admitting evidence of his receipt of workers' compensation benefits. He argues that before such evidence is allowed to show lack of incentive to return to work, actual malingering must be shown.

Respondents assert that this evidence is admissible to show Mydlarz's lack of motive to return to work. Respondents point out that in his two best years, Mydlarz made an average of $4,400 per year. However, he received approximately $60,000 in workers' compensation benefits. The court limited the instruction to the question of lack of motive by admonishing the jury not to use the evidence to reduce damages.

This Court has specifically determined that in a personal injury action the prejudicial impact of allowing a jury to receive evidence of plaintiff's pending workers' compensation claim vastly outweighs the probative value of such evidence. Allers v. Willis (Mont. 1982), 643 P.2d 592, 39 St.Rep. 745. The Court ruled in Allers that evidence of the workers' compensation claim was clearly inadmissible, quoting the following passage from an annotation:

> "Generally, it has been held to consti-
> tute error, requiring a reversal or new
> trial, to bring to the jury's attention
> the fact that the plaintiff in a personal
> injury or death action is entitled to

14

> workmen's compensation benefits. The courts have reasoned that such information would tend to prejudice the jury and influence their verdict, either as to liability or damages, as such information is ordinarily immaterial and irrelevant."
> 77 ALR2d at 1156.

Admission of this evidence was reversible error and requires a new trial. This holding renders Mydlarz's contention that the District Court erred by preventing him from presenting explanatory evidence moot.

Mydlarz also argues that the District Court erred in admitting evidence of an alleged drinking problem. He points out that there is no evidence that he was drinking at the time of the accident or that drinking was the cause of the accident. In fact, the first person who rendered aid to Mydlarz after the accident testified there was no indication that he had been drinking.

Respondents contend that Mydlarz "opened the door" for cross-examination on his drinking when he testified about it and this evidence is relevant to the cause of the accident. Mydlarz admitted that while on the ladder he "got the shakes and jumped off." Respondents contend that this indicates a drinking problem that is arguably a cause of the accident.

There is nothing in the record indicating Mydlarz was drinking on or before the day of the accident. The evidence of a general drinking problem was unfairly prejudicial. Rule 403, Mont.R.Evid., addresses prejudicial evidence. It reads:

> "Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Evidence that Mydlarz might have been an alcoholic when the accident occurred may have some probative value regarding the cause of the accident. However, the indirect relevance of this evidence requires us to find that the probative value of the evidence is clearly outweighed by the prejudicial effect on Mydlarz. We find that the jury could have been misled by evidence indicating Mydlarz was an alcoholic and erroneously presume the accident was caused by such disease. Therefore, the evidence was inadmissible and its introduction constitutes reversible error.

Mydlarz also contends that the District Court erred by admitting evidence of a prior fall he took on another project. This evidence is irrelevant to the present action and prejudicial to Mydlarz. The fall occurred one and one-half months prior to the accident in question and under different circumstances. Furthermore, contributory negligence is foreclosed as a defense in an action for damages under the Scaffolding Act. Pollard v. Todd, supra.

Respondents assert that Mydlarz opened the door for this testimony when he raised it on direct examination. We will not dismiss the challenge on this ground because Rice Motors initially mentioned the incident in its opening statement.

We hold that this evidence was improperly admitted. Rule 406, Mont.R.Evid., allows evidence of habit which is defined as a regular response to a repeated specific situation. Rule 406(a), Mont.R.Evid. Moreover, evidence of habit may be proven by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine. Rule 406(c), Mont.R.Evid. In our

16

view one instance of alleged carelessness does not indicate habitual carelessness.

Additionally, this Court has held that evidence of prior accidents is inadmissible to prove negligence apart from the Scaffolding Act. Runkle v. Burlington Northern (Mont. 1980), 613 P.2d 982, 986, 37 St.Rep. 995, 997.

Mydlarz next asserts that the lay opinion of one Ron Lins was improperly excluded. Prior to Mydlarz's accident Lins performed the same job that caused Mydlarz's accident. Lins fell under the same circumstances and was injured. Mydlarz argues that Lins's opinion concerning the safety of the device should have been allowed.

Respondent Palmer/Duncan contends the testimony was properly excluded since it was an opinion on the ultimate issue of the action. Further, Lins was never identified as an expert witness in interrogatories and would not qualify as such.

Respondent Rice Motors argues that since Lins did not perceive Mydlarz's accident, he could not give an opinion on it.

We hold that Lins's opinion should have been admitted into evidence. Lay opinion is admissible pursuant to Rule 701, Mont.R.Evid. The opinion must be based on actual perceptions of the witness and helpful to the jury to understand the facts in issue. State v. Fitzpatrick (Mont. 1980), 606 P.2d 1343, 37 St.Rep. 194. In this case, Lins's opinion as a layman should have been allowed. His opinion of the safety of the workplace was based on his perceptions from working the same job as Mydlarz. Further, his testimony would help the jury understand the conditions under which Mydlarz was working. Finally, the respondents' objections to Lins's

testimony were generally based on the failure to meet the expert testimony requirements, and the court rejected the opinion on that basis. The question of lay opinion testimony was not addressed.

Mydlarz further argues that the Court erred by refusing evidence regarding the repayment of a longstanding, possibly unacknowledged debt, by Palmer to one of Palmer's former employees. The witness would testify that once a subcontractor placed the protective covers on the sprinklers, the general contractor would ordinarily remove them. According to Mydlarz, Palmer/Duncan and its counsel did not like this testimony and on the evening prior to such testimony the offer to repay the old debt was made.

Palmer/Duncan contends that this was simply the repayment of an old debt and unconnected to the testimony.

We hold the testimony was properly excluded. While we recognize the circumstances surrounding the transaction were questionable, the record shows no more than repayment of a debt. Consequently, such evidence is irrelevant to the issues of the action and to the witness's testimony, and the District Court did not abuse its discretion by excluding it.

Further, this evidence is not admissible to show bias or prejudice on the part of Palmer/Duncan for repaying the debt simply because the testimony was substantially unfavorable to Palmer/Duncan.

Mydlarz also contends that the District Court abused its discretion by granting respondents' motion for a directed verdict on punitive damages as there was sufficient evidence to get this issue to the jury. Prior to the accident another employee fell under the same circumstances. Further, Palmer/Duncan knew of this fall and still removed the

scaffolding--arguably in violation of the law. Rice Motors also knew of this fall and the need for scaffolding but failed to remedy the situation. This, Mydlarz contends, indicates a willful and wanton disregard for the safety of the workers and a violation of the law, thereby warranting punitive damages.

Palmer/Duncan asserts that Mydlarz failed to produce evidence of Ron Lins's fall and the fact that something could have been done to prevent such an accident. Further, Palmer/Duncan employees were off the job when the prior accident happened. Finally, since the jury found no negligence was committed by Palmer/Duncan, punitive damages could not be awarded. Therefore, no error occurred in striking the request.

Rice Motors argues that there was no evidence that its employees saw Ron Lins fall off the ladder; thus, Rice Motors had no knowledge of the accident.

We hold the District Court erred in striking the punitive damage claim.

When deciding a motion for directed verdict by the defendants, the trial judge must view the evidence in a light most favorable to the plaintiff. Weber v. Blue Cross of Montana (Mont. 1982), 643 P.2d 198, 39 St.Rep. 245; Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 580 P.2d 915. No case should be withdrawn from the jury if reasonable men may differ as to the conclusions drawn from the evidence. Weber, supra; Solich v. Hale (1967), 150 Mont. 358, 435 P.2d 883.

Exemplary damages can be awarded pursuant to section 27-1-221, MCA, which reads:

> "When exemplary damages allowed. In any action for a breach of an obligation not arising from contract where the defendant

19

has been guilty of oppression, fraud, or
malice, actual or presumed, the jury, in
addition to the actual damages, may give
damages for the sake of example and by
way of punishing the defendant."

As stated in the above statute, the jury can award
exemplary damages where the defendant has been found guilty
of either actual or implied malice. Furthermore, implied
malice may be shown by proof that a defendant engaged in a
course of conduct knowing it to be harmful or unlawful.
Lauman v. Lee (Mont. 1981), 626 P.2d 830, 38 St.Rep. 499;
Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 580 P.2d
915, overruled on other grounds, Bohrer v. Clark (1978), 180
Mont. 233, 590 P.2d 117.

We find viewing the evidence in a light most favorable
Mydlarz reasonable men could differ as to whether or not
either respondent was guilty of actual or implied malice.
The issue of punitive damages should not have been taken from
the jury. There is evidence in the record indicating that
Palmer/Duncan removed the scaffolding before the painting
work was complete. This may have been in violation of the
law or the contract between Palmer/Duncan and Rice Motors.
Further, Palmer/Duncan may have known that this conduct could
cause harm to persons working on the ceiling since scaffold-
ing was used to paint the ceiling and sprinkler pipes.

Rice was arguably guilty of harmful conduct in allowing
the work from which Mydlarz was injured to continue. The
record indicates that Peter Rice attempted to locate scaf-
folding for Mydlarz when he began working on the ladder;
thus, he arguably acknowledged the danger or potential harm
of such device.

Mydlarz asserts that the District Court erred by fail-
ing to instruct the jury that following the directions of an

employer is not contributory negligence. We have held that the defense of contributory negligence cannot be raised when the Scaffolding Act is applicable. Pollard v. Todd, supra. Since we have found that the Act applies, such defense cannot be raised and this issue is moot.

Mydlarz contends that, notwithstanding the Scaffolding Act, Palmer/Duncan is guilty as a matter of law for removing the scaffolding under section 50-71-203, MCA. This Court has held that negligence as a matter of law requires a showing that the statutory violation is the proximate cause of the injuries sustained. Kudrna v. Comet Corp. (1977), 175 Mont. 29, 572 P.2d 183. While Palmer/Duncan may have violated the statute in question, the issue of proximate cause was not addressed. This, we hold, is best left to the trial court upon remand.

Mydlarz's challenges with respect to OSHA instructions and costs and disbursements are without merit. The question of OSHA violations was never addressed by the District Court and no OSHA citations were issued with respect to this project. The alleged violations are not part of the evidence and instructions thereon were properly denied. This Court has held that instructions not supported by the evidence brought out at trial need not be given. Adams v. Cheney (Mont. 1983), 661 P.2d 434, 40 St.Rep. 383; Payne v. Sorenson (Mont. 1979), 599 P.2d 362, 36 St.Rep. 1610.

Costs for certain depositions and witness fees were properly awarded to Mydlarz and Rice. Mydlarz used the depositions in question and the witnesses testified.

The judgment is vacated and the cause remanded to the District Court for a new trial.

_____
Chief Justice

21

We concur:

_____

Daniel J Shea

John C. Sheehy

_____

_____

_____

Justices

Hon. Frank B. Morrison
Justice, Supreme Court
Room 414 Justice Building
215 North Sanders
Helena, Montana  59620

Date:

Re:      July 10, 1984

         Mydlarz v. Palmer/Duncan Const. Co., No. 82-98, April 30, 1984,
         concurs in part and dissents in part


Page 23, line 13 from bottom --- Ulman v. Schwieger should read Ulmen
v. Schwieger.

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

WEST PUBLISHING COMPANY
Box 3526
St. Paul, MN 55165

Mr. Justice Frank B. Morrison, Jr. concurs in part and dissents in part as follows.

I concur in the resolution of all issues discussed in the majority opinion with the exception of the first issue. I do agree that the Montana Scaffolding Act applies to the facts of this case. This dissent addresses the question of "control"; discusses the relative position of Palmer/Duncan and Rice Motors; comes to a different conclusion regarding disposition of the first issue.

The majority opinion states:

"Finding the Act applies, we reverse and remand to the District Court to determine proximate cause and liability under rules set forth in State ex rel. Great Falls Nat'l Bank v. District Court (1969), 154 Mont. 336, 463 P.2d 326."

The holding of Great Falls National Bank insulates the owner from liability absent evidence of actual control. This holding in the Great Falls Bank case was modified in Stepanek v. Kober Construction, (1981) 38 St.Rep. 385, _____ P.2d _____. The modification in Stepanek changes the resolution of this issue.

In Ulman v. Schwieger, (1932) 92 Mont. 331, 12 P.2d 856 we held that one who undertakes to perform an inherently dangerous activity has a nondelegable duty and cannot be immunized by engaging the services of an independent contractor. The Great Falls Bank case addressed the subject of nondelegable duty but stated that an owner did not have a nondelegable duty running to employees of a subcontractor. If that rule were applied in this case, Rice Motors would not have a nondelegable duty that ran to the plaintiff here. However, in Stepanek we held that the 1972 constitution mandated that employees of subcontractors be treated equally with others. Therefore, we held that nondelegable duties do, in fact, run to employees of subcontractors. If Rice has a

23

nondelegable duty arising out of the performance of inherently dangerous work activities, then that nondelegable duty runs to Mydlarz, the plaintiff in this case.

I agree with the majority opinion that Palmer/Duncan has a nondelegable duty on the basis of the responsibility assumed by contract. This is in line with our holding in the Stepanek case. I would further hold that Rice motors, although it assumed no duty by contract, nevertheless has a nondelegable duty to see that inherently dangerous work-related activities are safely performed and that such a duty cannot be delegated to Palmer/Duncan so as to insulate Rice from liability. I believe such a holding comports with the law of Ulman v. Schwieger, supra.

The Scaffolding Act does not identify those who have the duties imposed by the Act. I would hold that the duty is first imposed upon the owner. If the owner engages a general contractor, that contractor also assumes the responsibilities imposed by the Act. For the reasons previously mentioned, neither of these two parties can effectively delegate their responsibilities and thereby escape liability for violation of the provisions of the Act.

Once the Scaffolding Act is applied to the facts of this case, liability necessarily attaches. There unquestionably was a failure causing the plaintiff's injury. Under the Act, contributory negligence is not a defense. Therefore, I would direct a verdict on liability in favor of plaintiff and remand for a new trial on damages.

_____
Justice

24

Mr. Justice Fred J. Weber dissents:

I respectfully dissent from the conclusion of the majority that the Montana Scaffolding Act applies to the facts of this case. As pointed out in the majority opinion, the essential portion of the Act is codified in section 50-77-101, MCA which, as pertinent to this case, states:

> "All scaffolds erected in this state for use in the erection . . . of buildings shall be well and safely supported, of sufficient width, and properly secured so as to ensure the safety of persons working on them . . . and to prevent them from falling . . . "

The statute was enacted in 1909. There is no general statement of legislative purpose for this chapter, which also refers to temporary floors in certain buildings, guarding of scaffolds and stair openings, temporary toilets, building inspector enforcement, and penalties of $100 to $200 for each offense.

The majority cites the purpose of the Act as stated in Pollard v. Todd (1966), 148 Mont. 171, 179, 418 P.2d 869, 873. Pollard states that the purpose of the Act is to impose absolute statutory liability to protect workmen and others from the "extraordinary hazards associated with scaffolds." Pollard was a case in which ladders were placed on both sides of a door at a distance of about 15 feet apart, each ladder was fitted with metal hooks called ladder jacks which are devices commonly used in the building trades to support a plank, and a wooden plank 18 to 20 feet long was positioned on the ladder jacks. While standing on this plank platform, the plaintiff fell 12 feet to the ground after the plank broke near the center. I agree with the conclusion in Pollard that a combination of ladders, ladder jacks and plank constitutes a scaffold under the Act.

25

That is a different question than is presented here. In essence, our question is: Is a ladder a scaffold under this Act? From the background of the Pollard case, the majority opinion moves to the conclusion that a scaffold is a structure for support in an elevated place, as defined in Webster's, and that any temporary apparatus providing footing above ground for workmen is a scaffold as held by the courts of Illinois. The majority does point out that the Illinois Act uses the phrase "all mechanical contrivances" instead of "scaffolds." The Court then suggests that because the purposes of the two acts are identical, it is appropriate to conclude that any mechanical contrivance is a scaffold. I find no reasoned basis for that conclusion.

The majority cites cases from other jurisdictions describing the types of structures or devices which have been classed as scaffolds. A review of these cases does indicate a broad variety in the types of structures which have been classed as scaffolds. However, none of the cases have concluded that a mere ladder is the equivalent of a scaffold. I find little support in those cases for the majority conclusion.

The majority opinion then adopts the analysis of the Illinois Court which has held that the inquiry is not limited to the identity of the object, but rather "how it was being utilized at the time of injury." That analysis is appropriate under the Illinois Act which is intended to include all mechanical contrivances. Obviously that phrase can properly include a ladder or a footstool. However, I find it of no assistance in determining what our legislature meant by using the term "scaffolds." Finally, the majority opinion concludes that "scaffolds" includes "any device utilized by workmen to allow them to work where a fall might

26

result in serious injury," and then concludes that a 16-foot ladder meets that definition.

Notwithstanding that extended analysis, a 16-foot ladder does not appear to fall within the statutory provision relating to "all scaffolds erected in this state." If a ladder meets the statutory definition, then a step-ladder, saw-horse, chair, or anything else from which a workman could fall and be hurt also meets the definition. I cannot conclude that the legislature intended that all these devices are to be classed as scaffolds erected in Montana.

It may well be that our statute should be modernized after 75 years so that it covers all mechanical contrivances as in Illinois. That amendment should be left to our legislature.

_____
Justice

I concur in the foregoing dissent.

_____
Justice

I concur with Justice Weber's dissent, but find in addition no factual or legal reason to keep Rice Motors in the lawsuit, and I would dismiss the same in this lawsuit.

_____
Justice

27